**Lee Roy JOHNSON, Appellant,**

v.

**PITTSBURG METALLURGICAL COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 13, 1970.

James W. Owens, Reed, Muir & Owens, Williams Graves, Paducah, for appellant.

Tom Marshall, Wheeler & Marshall, Paducah, for appellees.

MILLIKEN, Judge.

This appeal challenges the conclusion of the Workmen's Compensation Board as to the degree of claimant's permanent disability, which, in turn, was approved by the trial court on the appeal from the Board to it. Johnson claims total, permanent disability. The only permanent disability the Board found was partial.

The appellant, Lee Roy Johnson, fifty-seven years of age and head furnace man for the appellee, Pittsburg Metallurgical Company, was severely injured in June 1966 when an ore buggy weighing hundreds of pounds fell across his right foot resulting in a comminuted fracture of his first metatarsal and simple fractures of the next three metatarsals. Gangrene developed in the big toe from poor circulation and forced its amputation. He was hospitalized for three months and was not permitted to return to work until May 1967, nearly a year after the accident, and then at comparatively light work as a janitor, which paid just a dime an hour less than he had received

as head furnace man. All of the testimony in the hearing before the Board was taken in May 1968, nearly a year after Johnson's return to work and nearly two years after the accident.

The sole medical witness, Dr. Samuel L. French, testified that he first saw Johnson right after the accident in June 1966, but Johnson's first visit to him in the physician's office was in September of that year, which was followed by monthly visits and x-ray examinations until Johnson was permitted to return to light work. Dr. French estimated Johnson's functional disability at 15% to the body as a whole, but admitted that stiffness and pain in the foot was still present which, he thought, was caused more by soft tissue injury than by the fractures. He said that the foot was improving according to Johnson's own statements and according to the x-rays. Dr. French said Johnson's complaints about pain and stiffness were not out of line with what happened and that in rating the disability at 15% to the body as a whole,

"I am rating him at this time for what I am guessing he will have when he is through with it. He is more than that now * * *. He has been allowed to rest more than a man would ordinarily on this duty. I know that his toe is going to cause him a little difficulty in balance, and I believe from time to time, with this much tissue disturbance, he will have some little problems with that foot."

The Board awarded Johnson benefits for temporary, total disability from the time of the accident until his return to work, and permanent, partial disability benefits at the rate of 15% to the body as a whole, apparently accepting Dr. French's 15% functional or anatomical disability to the body as a whole as a satisfactory criterion for estimating Johnson's occupational disability despite the fact that. Dr. French said that Johnson's disability was more than that at the time the doctor testified, nearly two years after the accident and nearly a year after Johnson's return to work. We think this was a palpable error on the part of the Board so far as its evaluation of Johnson's occupational disability is concerned, for both Dr. French and Johnson had also testified that the lifting or bearing of heavy weight and the walking on rough surfaces was too much for the stiff and sensitive foot to withstand at the time they testified.

The only testimony in this record is that of Johnson and Dr. French, and all it really establishes is that Johnson could not do his former heavy work at the time of their testimony, nearly two years after the accident and nearly a year after his return to light work as a janitor. The 15% functional disability Dr. French thought would be Johnson's ultimate functional disability was an expectation, a forecast, not the statement of a fact about a stabilized physical condition of Johnson. As a consequence, we think the Board's finding should be that Johnson was still suffering total disability so far as work in his usual job classification—heavy manual labor—was concerned, for which an open-end award for total disability should have been given. Leep v. Kentucky State Police, Ky., 366 S.W.2d 729; Methodist Hospital of Kentucky v. Ratliff, Ky., 391 S.W.2d 676, and Deby Coal Co. v. Caldwell, Ky., 383 S.W.2d 905. If Johnson's condition stabilizes, the case may be re-opened and the disability re-evaluated.

The factual situation in the case at bar does not come within the doctrine of those cases in which the job classification of the employee was so amorphous that it defied an encompassing definition, as where a relief or substitute truck-driver was injured, could not drive a truck, but could do ordinary work such as assembling plastic picture frames, and where we upheld an award for partial disability. Crib Diaper Service v. Standifer, Ky., 436 S.W.2d 501. Or where an injured skilled metal worker could use part of his skill in other metal work for his employer. Highland Roofing & Sheet Metal Co. v. Helms, Ky., 407 S.W.2d 132. In the latter case we said that the continued employment of a worker in a job not generally performed solely by the handicapped

was evidence that a worker had a partial rather than a total disability.

The injuries in these latter cases occurred before our present rationale for evaluating disability was promulgated in Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968), as did the case at bar, and so are expressly not governed by it. However, it is interesting to note that the actual holding in Osborne affirmed a judgment directing the Board to award total, permanent disability where it had allowed only partial, permanent disability when the medical proof was that the injured coal miner's back injury amounted to a 10 to 15% functional disability to the body as a whole yet " * * * he should not be doing heavy lifting, stooping or bending because of his continued symptoms."

We have somewhat the same situation in the case at bar but, because of the nature of the injury and the nature of the testimony, we conclude that an open-end award of total disability would be more fair to the parties.

The judgment is reversed and the case remanded to the Board for proceedings consistent herewith.

All concur.