**WINN DIXIE LOUISVILLE, INC.,**
Appellant,

v.

*Helen WATSON et al., Appellees.*

Court of Appeals of Kentucky.

Nov. 19, 1971.

John K. Gordinier, Curtis & Rose, Louisville, for appellant.

Edwin Cohen, Louisville, for appellees.

REED, Judge.

This is a workmen's compensation case in which the board granted the employee's request to reopen a previously entered award (KRS 342.125). As a result of the reopening, the board increased the award from 25 percent permanent partial disability to total and permanent disability. The employer appealed the board's decision to the circuit court and that court upheld the board's finding. The employer thereupon appealed to this court.

Helen Watson was injured in September 1964 while working for Winn Dixie Louisville, Inc., as a cashier in a grocery store. She struck her right elbow on the cash register. On the original claim for workmen's compensation benefits filed by the injured employee, the medical evidence established that Mrs. Watson was suffering from bursitis of the elbow. She was expected to recover without any pain or discomfort.

In October of 1966, the board decided the original claim and found that the claimant was able to handle her activities as a cashier, but had sustained partial disability that would impinge upon her ability to do heavy lifting; the board awarded her 25 percent permanent partial disability.

In August 1969 the claimant moved the board to reopen its October 1966 award on the ground of change of condition. The evidence introduced in support of the application to increase the award was in substance that the injured elbow had continued to grow worse; that she had had two operations on it, one in March 1967 and another in January 1968. The medical evidence demonstrated that claimant must wear a cast on her dominant right arm and is unable to do any manual labor. A vocational counselor stated that in his opinion claimant could not find suitable employment in the regular labor market in view of her physical condition and limited education.

It was admitted, however, that she secured employment with Goodwill Industries, a nonprofit organization engaged in the employment of the handicapped. Her work with that enterprise was as a supervisor; she had 13 to 18 employees under her direct supervision. As a regularly employed person she is presently working a 40-hour week at a wage of $2.10 an hour.

Both the employer and the claimant appear to concede the applicability of our decision in Osborne v. Johnson, Ky., 432 S. W.2d 800 (1968), and both sides to this dispute rely upon it.

The employer asserts that under the evidence the board was unauthorized to reopen its previous award. It is pointed out that the physician who treated claimant at the time of the previous award and whom she had consulted frequently thereafter was not called as a witness. It is also apparent that the physician who did testify in the proceedings to reopen had no knowledge of claimant's physical condition at the time of the previous award.

The claimant testified concerning the worsening of her physical condition and it is uncontradicted that she had surgery on the elbow on two occasions after the board had made its first award. No serious argument is made that the subsequent events were not directly related to the bursitis that had been caused by the industrial accident. We believe that the total evidence was sufficient to enable the board to reasonably conclude that claimant's physical condition had worsened since the accident and that the degree of occupational disability from which she suffered at the time of the previous award had increased.

Our problem, however, is whether under Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968), the claimant was entitled to a finding of *total* and permanent disability. We

recently construed the effect of the Osborne decision in Queen City Dinettes v. Bowling, Ky., 472 S.W.2d 72 (decided October 22, 1971). In that decision we held that where there was no evidence that the injured employee is so physically impaired that he is not capable of performing any kind of *regular employment* and where there is no showing that regular employment in the kind of work the injured employee can perform is unavailable on the labor market in the area involved, a finding of total disability is impermissible under the Osborne decision.

▪▪ Although it is true claimant's employment in this case is characterized as "sheltered" activity, it is conceded that she is *regularly working* a 40-hour week and receiving $2.10 per hour. There is no suggestion that this activity is in the nature of public welfare or charity. Her duties are supervisory, and under those circumstances we cannot say that claimant is *totally* disabled at the present time. Since her injury appeared to be permanent and by subsequent developments had increased in appreciable proportions, the board in our view was fully justified in regarding the degree of her occupational disability as enhanced. In this aspect the relevant considerations are the nature of the injury, the age of the worker and other considerations such as the character of her present employment and the uncertainty of future employment opportunities.

▪ What we are simply saying is this: Upon the record before us, it would appear that claimant is not at the present time *totally* disabled. When all elements discussed in the Osborne opinion are considered, however, the board had substantial basis in the evidence for increasing the amount of the partial disability previously found. The extent of the increase of partial occupational disability is a function for the board's determination and not for the courts.

The judgment is reversed with directions to enter a new judgment remanding the case to the board for further proceedings consistent herewith.

All concur.