**HARRY GORDON SCRAP MATERIALS, INC. and United States Fidelity & Guaranty Company, Appellants,**

v.

**Willie DAVIS, Sr., and Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

March 17, 1972.

W. R. Patterson, Jr., Landrum, Patterson & Dickey, Lexington, for appellants.

Paul D. Ross, Jenkins & Ross, Lexington, for appellees.

CULLEN, Commissioner.

This is an appeal from a circuit court judgment affirming a Workmen's Compensation Board award based upon a finding that the claimant had sustained a 20 percent partial disability.

Appellee Willie Davis, Sr., a manual laborer with a fourth-grade education, fractured his right wrist on June 9, 1969, in a work-connected accident while he was employed by appellant Harry Gordon Scrap Materials, Inc. He fell twelve feet from the roof to the floor of a railroad box car. He testified that the fall made him " . . . awfully sick . . . " and that he " . . . kind of passed out for a few minutes . . . " Davis was hospitalized as an outpatient for several hours, during which time his wrist was placed in a cast. The following day he returned to his same employment and continued working full time, at equal or greater wages, until November 18, 1969. Thereafter, he was unemployed until January 15, 1970, when he resumed working for the same employer, and he continued until April 22, 1970, during which latter time he received wages at a greater rate than at the time of the injury. Davis was asked and answered:

"Q 53. Did you state you had done some welding?

A. No, sir.

Q 54. I mean cutting.

A. I used the torch.

Q 55. Could you do that satisfactorily?

A.  Well, you take a right-handed man, he can't do much left-handed.

.     .     .     .     .     .

Q 60.  Will you tell the board the reason you are not working for anybody?

A.  I just can't do no heavy lifting and digging, and that is about all a man with no education can do, is rough work."

However, Davis had told Dr. Kenneth Phillips that the reason he quit was to retire so that his earnings would not disqualify him from receiving Social Security benefits.

With respect to traumatic injuries Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968), directs that:

"  .   .   .   in those instances in which the workman has sustained *no loss of immediate earning capacity* but has incurred a permanent injury of appreciable proportions, the Workmen's Compensation Board, under KRS 342.110, can and should make an allowance for some degree of permanent partial disabililty on the basis of the probability of future impairment of earning capacity as indicated by the nature of the injury, the age of the workman, and other relevant factors."

Appellants contend that Davis did not sustain "  .   .   .   a permanent injury of appreciable proportions   .   .   .," wherefore, the board erroneously made the award. They note that Davis returned to his job the day following the accident and that except for a period of less than two months, during which time he was unemployed for personal reasons unrelated to the injury, he worked constantly up to April 22, 1970, as a manual laborer.  He filed his claim for benefits on June 5, 1970.

The physician who treated Davis, Dr. Phillips, was asked and answered questions as follows:

"A 47.  Are you of of the opinion, based upon reasonable medical certainty, as to whether or not Mr. Davis will be able to continue as a laborer by reason of his disability?

A.  I think he could continue with his regular work.

.     .     .     .     .     .

Q 22.  It is your further opinion that whatever functional disability he might have would not interfere with the performance of work as he was doing at the time of his injury?

A.  Yes, sir.

Q 23.  In other words, you feel that at the present time, or as of the date of your last examination, Mr. Davis is able to physically perform the same type of work activities that he was doing at the time of his accident?

A.  Yes, sir.

.     .     .     .     .     .

Q 1.  Doctor, I believe you testified that in your opinion Mr. Davis could perform the same type of labor now after the injury that he could immediately prior to injury, and by that do you mean welding or all types of labor?

A.  All types of labor.

.     .     .     .     .     .

Q 5.  Then I gather you are of the opinion that he could perform all types of manual labor.

A.  Yes, I believe he could."

The physician testified that on October 28, 1969, during one of Davis' eighteen office visits, Davis complained of pain in his shoulder and that Davis "  .   .   .   still could not fully flex the fingers and that there was still some weakness in gripping with the hand  .   .   .   (also) there was a little tenderness around the front of the right shoulder."  The physician estimated that on the November 11, 1969 visit Davis "  .   .   .   had about 50 percent weakness in grip with the right hand."  Davis continued to have pain in the right shoulder area and in the wrist on December 9, 1969. On other visits the physician found aching

in the shoulder area and some limitation of motion in the wrist, arm and shoulder. Dr. Phillips was interrogated and answered as follows:

"Q 44. Doctor, you have spoken of your findings concerning Mr. Davis' hand, wrist and shoulder areas. Are you of the opinion that these disabilities are of a permanent nature or temporary nature?

A. I think he has some permanent impairment of the extremity.

.    .    .    .    .    .

Q 47. Are you of the opinion, based upon reasonable medical certainty, as to whether or not Mr. Davis will be able to continue as a laborer by reason of his disability?

A. I think he could continue with his regular work.

Q 48. Are you able to state with reasonable medical certainty any permanent disability which Mr. Davis may have by reason of injuries to his hand or to his arm as they may relate, not only to disability of the hand, wrist and shoulder, but also to the body as a whole?

A. I think he has an impairment to that right upper extremity of about 15 percent, and this related to the body as a whole would be 10 percent.

Dr. Phillips also testified:

.    .    .    .    .    .

Q 19. Is there some question in your mind, however, as to whether or not his complaints with reference to the shoulder were related to any fall on June 9, inasmuch as there were no initial complaints of any shoulder injury and inasmuch as his complaints in that regard did not even arise until about four months later?

A. Yes, I could not relate his shoulder symptoms to the accident."

In Hawkins Brothers Coal Company v. Thacker, Ky., 468 S.W.2d 256 (1971), and Island Creek Coal Co. v. Williams, Ky., 469 S.W.2d 64 (1971), we held that, under the principles of Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968), the board could and should make an allowance for some degree of permanent partial disability on the basis of the probability of future impairment of earning capacity where the workman has sustained no loss of immediate earning capacity but has incurred a permanent injury of appreciable proportions. The elements to be considered in fixing the degree of permanent partial disability in such case are the nature of the injury, the age of the workman and other relevant circumstances.

In Codell Construction Company v. Dixon et al., Ky., 478 S.W.2d 703 (decided today), we commented on the significance of the phrase in the Osborne opinion "of appreciable proportions." A consideration of the basic approach of Osborne illustrates that the phrase uses the adjective "appreciable" to mean substantial or of significant consequence. In the instant case, there is no probative evidence to support the necessarily implicit finding of the board that the claimant incurred a permanent injury of substantial proportions or a permanent injury of significant consequence.

The undisputed evidence is that claimant fractured his wrist and returned to regular employment on the day following his injury. His own testimony does not and could not undertake to make a prognosis concerning the effect of the injury on future impairment of earning capacity. The only medical evidence repeatedly established that he was physically able to pursue his regular work and that after injury he was physically able to perform all types of labor. Therefore, there was no evidence to support another necessarily implicit board finding that a probability of future impairment of earning capacity was present. Hence, we conclude that the board's award was not supported by substantial evidence and was

**734**

clearly erroneous. Upon this state of record, the proper course for the trial court would have been to remand the case to the board with directions to dismiss the claim.

The judgment is reversed with directions that the circuit court enter judgment remanding the case to the board with directions to dismiss the claim.

HILL, MILLIKEN, NEIKIRK, OSBORNE, PALMORE and REED, JJ., concur.