DANE SHEET METAL, INC., and
Michigan Mutual Insurance
Company, Appellants,

v.

Stanley Eugene JOHNSON and
Workmen's Compensation
Board, Appellees.

Court of Appeals of Kentucky.

March 24, 1978.

Rehearing Denied May 5, 1978.

Larry L. Johnson, William P. Swain, Boehl Stopher Graves & Deindoerfer, Louisville, for appellants.

Robert L. Catlett, Jr., Segal, Isenberg, Sales, Stewart & Nutt, Louisville, for appellees.

Before MARTIN, C. J., and REYNOLDS and WILHOIT, JJ.

MARTIN, Chief Judge.

This is an appeal from a judgment of the Jefferson Circuit Court upholding an award of the Workmen's Compensation Board to Stanley Eugene Johnson for permanent partial disability of 15%.

It is the primary position of the appellants that because the claimant's injury is not of appreciable proportions, and because he has returned to his regular employment, he is not entitled to any benefits for permanent partial disability.

On February 26, 1975, the date of the injury, the claimant was employed by the appellant, Dane Sheet Metal, Inc., in Louisville. Johnson, who is right-handed, testified that on that date he cut his left index finger while operating a fabricating machine for his employer.

Johnson was treated for the cut by Dr. E. Atasoy at Jewish Hospital. He remained in the hospital for four days, but had no subsequent surgery. He returned to work on the Monday following his injury on Wednesday. His hand was in a cast for three weeks, and during this time he was provided light work by his employer. Shortly after the cast was removed, Johnson returned to his regular job and was still so employed at the time of the hearing before the Workmen's Compensation Board. His only present complaints are diminished sensation in the index finger and inability to bend the finger sufficiently to make a fist.

Dr. Atasoy, who was the treating physician, testified that the cut severed both flexor tendons and both nerves in the index finger, as well as an artery on the ulnar side of the finger. He stated that the tendons, nerves and the artery were repaired by surgery and that the hand was placed in a plaster splint and traction. Johnson's improvement was substantial. Dr. Atasoy stated that sensation in the injured finger was diminished but not completely missing. He testified Johnson could differentiate between hot and cold. Dr. Atasoy placed no physical restrictions on him, and testified that he should be able to grasp things, and hold things with his index finger. He has an almost normal range of flexion of one hundred degrees. Dr. Atasoy ascribed a functional disability rating of eight and one-half percent to the body as a whole.

Johnson was also examined by Dr. W. McDaniel Ewing. Dr. Ewing's diagnosis was "partial ankylosis (loss of motion) and deformity of the left index finger." Dr. Ewing gave a functional rating of ten percent to the left hand, translated to five percent to the body as a whole.

Johnson returned to his regular employment shortly after removal of the cast from his left hand. There was testimony that he has performed his job satisfactorily since this injury. In its opinion the Board overlooked this fact by finding that "he returned to work at a different but lighter job." The evidence established that the lighter work continued only for the few weeks that Johnson was wearing the cast.

In the case of *Osborne v. Johnson,* Ky., 432 S.W.2d 800 (1968), and more recently in *Couliette v. International Harvester Co.,* Ky., 545 S.W.2d 939 (1976), the concept of "disability" was defined as an occupational disability or loss of earning capacity, as distinguished from purely functional impairment. Under these decisions when the employee returns to his regular employment, he is not entitled to recover permanent partial benefits unless his injury is of such "appreciable proportions" as to be indicative of future impairment of earning capacity as manifested by the nature of the injury, the age of the workman, and other relevant factors.

In *Harry Gordon Scrap Materials, Inc. v. Davis,* Ky., 478 S.W.2d 731 (1972), the claimant suffered a fracture of his right wrist and was given a disability rating of ten percent to the body as a whole. In commenting upon the rationale of *Osborne v. Johnson, supra,* the court stated at page 733:

> In *Codell Construction Company v. Dixon, et al.,* Ky., 478 S.W.2d 703 (decided today), we commented on the significance of the phrase in the *Osborne* opinion "of appreciable proportions." A consideration of the basic approach of *Osborne* illustrates that the phrase uses the adjective "appreciable" to mean substantial or of significant consequence. In the instant case, there is no probative evidence to support the necessarily implicit finding of the board that the claimant incurred a permanent injury of substantial proportions or a permanent injury of significant consequence.

The award of the Board for twenty percent permanent partial disability was overturned and the opinion further stated at pages 733–4:

> The undisputed evidence is that claimant fractured his wrist and returned to regular employment on the day following his injury. His own testimony does not and could not undertake to make a prognosis concerning the effect of the injury on future impairment of earning capacity. The only medical evidence repeatedly established that he was physically able to pursue his regular work and that after injury he was physically able to perform all types of labor. Therefore, there was no evidence to support another necessarily implicit board finding that a probability of future impairment of earning capacity was present. Hence, we conclude that the board's award was not supported by substantial evidence and was clearly erroneous.

In the present case the Board erred in not being aware that the claimant had returned to his regular employment. The Board's opinion also takes the testimony of Dr. Atasoy out of context. The opinion recites Dr. Atasoy's testimony as follows: "No motion of the finger from the hand knuckles down and no sensation in the finger, both nerves." However, as Dr. Atasoy later explained, the consequences of the claimant's initial injury have improved substantially:

A. Well, he has good range of motion of the finger, it's not perfect like a normal hand and it may, you know, I understand, he may have this kind of complaint. But he should be able to grab things, hold things with the index finger. He has almost a normal range of flexion, a hundred degrees.

Q31. Does he have the ability to differentiate between hot and cold with that finger?

A. Yes.

The severity of the initial injury was not the question before the Board. The issue was the residual impairment as a consequence of the injury. The residual impairment in this case is minimal.

For these reasons, the judgment of the Jefferson Circuit Court is reversed.

All concur.