**Adam OSBORNE, doing business as Pine Fork Coal Company, Appellant,**

v.

**Richard JOHNSON, Workmen's Compensation Board and Carl Cabe, Commissioner of Industrial Relations, Custodian of Special Fund, Appellees.**

Court of Appeals of Kentucky.

March 8, 1968.

As Modified on Denial of Rehearing
Nov. 1, 1968.

801

E. R. Hays, Baird & Hays, Pikeville, for appellant.

Reed D. Anderson, Combs & Anderson, Pikeville, Thomas R. Emerson, Dept. of Labor, Frankfort, for appellees.

CULLEN, Commissioner.

The Workmen's Compensation Board made an award of compensation to Richard Johnson on the basis of 15 percent permanent partial disability. On appeal to the circuit court judgment was entered settting aside the board's order and remanding the case to the board with directions to enter an award for total permanent disability. Johnson's employer has appealed.

Johnson was a coal miner and claimed disability from a back injury. Upon the hearing of the claim, there being a question as to the existence and extent of a pre-existing congenital defect, the board appointed a physician under KRS 342.121 to to make an examination and report. In the formal part of his report, in which he answered specific questions posed by the board's report form, this physician stated that Johnson had a "10 to 15 percent partial permanent disability to the body as a whole." However, in the narrative part of the report he said:

"Apparently this patient sustained a back injury on September 15, 1965, from

which he has not recovered. It would be my opinion that the patient should be wearing a low back brace at all times and that he should be doing only light work. Certainly he should not be doing heavy lifting, stooping and bending, because of his continued symptoms."

We are unable to distinguish this case from Deby Coal Company v. Caldwell, Ky., 383 S.W.2d 905. There, the same physician who is in this case reported formally that the workman's disability was 50 percent, but stated narratively his opinion that the man "could do only light work." This court held that the report required a finding by the board that the man was totally, permanently disabled, it being considered that the percentage rating was in terms of physical impairment or functional disability whereas the opinion that the man could do only light work was evidence of occupational disability of a total nature.

■ Under the holding in the Deby case the circuit court in the instant case correctly adjudged that the board erred in basing its award on the physician's disability percentage rating instead of upon the physician's evaluation that the employe was unable to perform hard physical labor (such as is required in coal mining). Under Deby and under Ed Hall Drilling Co. v. Profitt, Ky., 424 S.W.2d 403, the physician's report, upon exceptions to it having been overruled by the board, was controlling as to the extent of functional disability even though the physician made no apportionment, and the evaluation of inability of the workman to perform hard physical labor was the equivalent of a finding of total functional disability which in the case of this coal miner amounted to total occupational disability.

Although, as we have indicated, the circuit court properly followed the Deby case, we are not fully satisfied that *Deby* and the decisions upon which it rests properly interpret the law concerning the determination of disability. So we have reconsidered the law in this area and shall state herein a modified interpretation, with the reasons therefor.

■ We start with acceptance of the proposition that "disability" as used in the workmen's compensation law means *occupational* disability as distinguished from *functional* disability (mere bodily impairment).[1] Our adherence to this proposition is evidenced by such decisions as McCown v. Hellier Elkhorn Coal Company, Ky., 399 S.W.2d 719; Kilgore v. Goose Creek Coal Company, Ky., 392 S.W.2d 78; Deby Coal Company v. Caldwell, Ky., 383 S.W.2d 905; Leep v. Kentucky State Police, Ky., 366 S.W.2d 729; and E. & L. Transport Company v. Hayes, Ky., 341 S.W.2d 240, 84 A.L.R.2d 1102. It is inherent in the provisions of KRS 342.110 that require consideration to be given to the impairment or limitation of "occupational opportunities." And it is endorsed by Larson, who says:

"Compensable disability is inability, as the result of a work-connected injury, to perform or obtain work suitable to the claimant's qualifications and training. The degree of disability depends on impairment of earning capacity, which in turn is presumptively determined by comparing pre-injury earnings with post-injury earning ability; the presumption may, however, be rebutted by showing that post-injury earnings do not accurately reflect claimant's true earning power. * * *

1. Of course the "loss of members" compensation provided for in KRS 342.105 is not based on any concept of occupational disability. It is simply a schedule of purely arbitrary allowances for loss of specified functional members of the body. However, the fact that it embodies a functional theory in no way militates against the idea that KRS 342.095 and 342.110 contemplate occupational disability. Consistency of theory or philosophy has never been a feature of our workmen's compensation law.

"Total disability may be found, in spite of sporadic earnings, if the claimant's physical condition is such as to disqualify him for *regular* employment in the labor market. * * *" Larson's Workmen's Compensation, Vol. 2, sec. 57.00.

█ If occupational disability is the basis for compensation and if, as seems clear, it means impairment of earning capacity, it would seem that all that need be determined in a compensation case, as concerns disability, is: To what extent has the injured workman's earning capacity been impaired? And it would seem that this would involve only these determinations: (1) What kind of work normally available on the local labor market was the man capable, by qualifications and training, of performing prior to injury; (2) what were the normal wages in such employment; (3) what kind of work normally available on the local labor market is the man capable of performing since his injury; and (4) what are the normal wages in such employment? Larson says:

"* * * The proper balancing of the medical and the wage-loss factors is * * * the essence of the 'disability' problem in workmen's compensation." Larson's Workmen's Compensation, Vol. 2, sec. 57.10

"Degree of disability is calculated under most acts by comparing actual earnings before the injury with *earning capacity* after the injury.

* * *

"The ultimate objective of the disability test is, by discounting * * * variables, to determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured, taking wage levels, hours of work, and claimant's age and state of training as of exactly the same period used for calculating actual wages earned before the injury. Only by the elimination of all variables except the injury itself can a reasonably accurate estimate be made of the impairment of earning capacity to be attributed to that injury." Larson's Workmen's Compensation, Vol. 2, sec. 57.21

█ Under the foregoing concept *medical percentages* are not determinative.[2] The real question is: How much less money can the injured workman command in the labor market? The doctors' testimony should be addressed to the question of what job requirements the injured man is physically capable of performing (taking into consideration his qualifications and training). The board's determination of the extent to which the man's earning capacity is impaired then should be made on the basis of evidence as to the existence, in the local area or region, of regular employment opportunities for the type of work the medical testimony shows the man is capable of performing, and the prevailing wage rates in such employment.[3]

█ If the board finds that the workman is so physically impaired that he is not capable of performing any kind of work of regular employment, or if the board finds that regular employment in the kind of work the man can perform is not available on the local labor market, the man will be considered to be *totally* disabled. Otherwise he will be considered to be only *partially* disabled. And the *percentage* of his partial disability will be determined by the ratio of the prevailing wage rates in the kind of employment available to him, to the wage rates earnable by him before being injured.

It will be noticed that in the rule here outlined no significance is given to the workman's *usual occupation* other than that

2. Medical percentages still would be significant in *apportionment* cases.

3. We are talking about hired employment, not self-employment. We do not believe the law contemplates that consideration shall be given to the workman's ability to sell apples or pencils on the street.

the *wages* earned by him in that occupation before injury are a factor in determining his pre-injury wage capacity for comparison with his post-injury wage capacity.

"  *  *  *  the normal rule is that disability is not tested by any particular occupation, and that, even in the case of a skilled craftsman, he will not be deemed totally disabled if unskilled or light work that he can perform is continuously available to him." Larson's Workmen's Compensation, Vol. 2, sec. 57.53.

■ From the foregoing discussion a conclusion would seem to be that if the injured workman for the present time can earn the same wages as before being injured, he is not disabled at all for workmen's compensation purposes. However, we believe that to adopt such a proposition would be to treat earning capacity as being static and perfectly measurable (which of course it is not), and to ignore the attrition from the mere passing of the years. KRS 342.110 requires that consideration be given to the nature of the injury and to the age of the workman. While a workman who has sustained a permanent bodily injury of appreciable proportions may suffer no reduction of immediate earning capacity, it is likely that his ultimate earning capacity will be reduced either by a shortening of his work life or a reduction of employment opportunities through a combination of age and physical impairment. Accordingly, it is our opinion that in those instances in which the workman has sustained no loss of immediate earning capacity but has incurred a permanent injury of appreciable proportions, the Workmen's Compensation Board, under KRS 342.110, can and should make an allowance for some degree of permanent partial disability on the basis of the probability of future impairment of earning capacity as indicated by the nature of the injury, the age of the workman, and other relevant factors.

■ We limit the applicability of the allowance just discussed to situations in which there has been no reduction of immediate earning capacity because we think that in those situations where there has been a reduction of immediate earning capacity, as reflected in lower wages, the lower wages themselves may be considered to embody full recognition of the physical impairment.

We recognize that the interpretation of the workmen's compensation law that we are adopting herein does not give *full* recompense for occupational disability in that it does not give consideration to the fact that the workman's job opportunities may have been reduced in number as a result of his injury. However, the inclusion of this factor would require use of a highly complicated formula by no means accurate in result. The workmen's compensation law has never approximated the giving of full compensation for the losses attributable to disability. It is perhaps enough to say that, certainly, the approach adopted in this opinion comes closer to fair compensation than one in which the workman gets only an allowance for partial disability even though he can't get a job, or one in which the workman gets an allowance for total disability even though he can get a job.

■ We desire to make clear that as concerns determination of the workman's post-injury earning capacity, it is to be based upon *normal* employment conditions. As said by Larson:

"  *  *  *  The essence of the test is the probable dependability with which the claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps." Larson's Workmen's Compensation, Vol. 2, Sec. 57.51.

■ Since the determination of post-injury earning capacity is to be based on normal economic conditions, it follows that a mere fluctuation in economic conditions

will not be considered a "change of conditions" within the meaning of the reopening statute, KRS 342.125. As we interpret that statute, the change of conditions it contemplates is a change of the workman's *physical* condition.

It should be made clear that the holding of this opinion in no way affects the rule in *occupational disease* cases, as stated in Allen v. Commonwealth of Kentucky, Department of Highways, Ky., 425 S.W.2d 283 (decided March 8, 1968), that so long as the workman continues to work full-time for the same employer no disability can be considered to have come into existence, and the filing of a claim is *premature*. Everything said in the instant opinion presupposes that the claim of disability has matured either by virtue of an *accident* or, in occupational disease cases, by a cessation of full-time employment.

In such cases as Baier v. Schnell, Ky., 323 S.W.2d 587, Kilgore v. Goose Creek Coal Company, Ky., 392 S.W.2d 78, McCown v. Hellier Elkhorn Coal Company, Ky., 399 S.W.2d 719, and Congleton Brothers v. Farmer, Ky., 399 S.W.2d 722, although this court announced its adherence to the "occupational" disability concept, the actual holdings of the cases either approved or authorized awards of compensation for partial disability fixed according to the doctors' ratings of *functional* disability. To the extent those cases may be considered to have perpetuated the "functional" disability concept they were inconsistent with the cases cited in the following paragraph which in substance abolished that concept. Accordingly, to such extent they are hereby overruled effective forthwith.

Such cases as Leep v. Kentucky State Police, Ky., 366 S.W.2d 729, Sullivan v. Foster & Creighton Company, Ky., 394 S.W.2d 917, E. & L. Transport Company v. Hayes, Ky., 341 S.W.2d 240, Deby Coal Company v. Caldwell, Ky., 383 S.W.2d 905, and Ed. Hall Drilling Company v. Profitt, Ky., 424 S.W.2d 403 (decided October 14, 1966, and modified February 23, 1968) do not conform with the views herein expressed either because they base the determination of total disability solely on the workman's *usual* occupation, or because they *assume* that a workman physically disabled from performing his usual occupation cannot obtain any regular employment. To the extent that these cases (and other cases terminations required under this opinion of similar import) are inconsistent with the holding of this opinion they are overruled. (This includes *Deby*, upon which the circuit court relied in the instant case.) However, to avoid confusion and to enable preparation for the making of the factual determinations required under this opinion the overruling of the cases mentioned in this paragraph will have prospective application only, being applicable only to claims filed after the effective date of this opinion. Cf. Lasher v. Commonwealth, Ky., 418 S.W.2d 416.

The judgment is affirmed.

All concur except MONTGOMERY, J., who dissents.