Lloyd **COULIETTE**, Appellant,

v.

**INTERNATIONAL HARVESTER CO. et al., Appellees.**

Supreme Court of Kentucky.

Dec. 3, 1976.

Rehearing Denied Feb. 25, 1977.

Robert M. Lindsay, Segal, Isenberg, Sales, Stewart & Nutt, Louisville, for appellant.

Carl Arthur Henlein, John W. Bilby, Middleton, Reutlinger & Baird, Louisville, Kenneth E. Hollis, Director, Dept. of Labor, Frankfort, for appellees.

William F. Gadd, Frankfort, for Special Fund Dept. of Labor.

PALMORE, Justice.

This is a workmen's compensation case in which the claimant appeals from a judgment sustaining a final order of the Workmen's Compensation Board awarding temporary but denying permanent benefits.

The claimant injured his knee while at work on December 1, 1973. Surgery was required, and it is undisputed that the injury has left him with a permanent functional impairment (insofar as it is attributable to the accident alone) of some 5% to the body as a whole. However, following the period of temporary disability the claimant returned to his regular employment with no decrease in wages, and the question before us is whether KRS 342.620(9), which became effective January 1, 1973, modifies the principle theretofore announced in Osborne v. Johnson, Ky., 432 S.W.2d 800, 804 (1968), with respect to permanent injuries that do not precipitate loss of immediate earning power.

The rule stated in Osborne (432 S.W.2d at p. 804) was "that in those instances in which the workman has sustained no loss of immediate earning capacity but has incurred a permanent injury of appreciable proportions, the Workmen's Compensation Board, under KRS 342.110, can and should make an allowance for some degree of permanent partial disability on the basis of the probability of future impairment of earning capacity as indicated by the nature of the injury, the age of the workman, and other relevant factors."

KRS 342.110(1), which was repealed by the same act (ch. 78, § 36, Acts of 1972) that created KRS 342.620, provided that in all cases of unscheduled permanent partial disability "compensation shall be determined according to the percentage of disability, taking into account, among other things, any previous disability, the nature of the physical injury or disfigurement, the occupation of the injured employe and age at the time of injury," etc.

The Osborne opinion centers on the proposition that "disability" means occupational as distinguished from purely functional impairment. 432 S.W.2d at p. 802. Its principal significance lies in its departure from the so-called "Leep" rule, originating in E. & L. Transport Company v. Hayes, Ky., 341 S.W.2d 240, 84 A.L.R.2d 1102 (1960), under which it had been held that if a workman was totally disabled from working at his usual occupation, and his capacity to do other kinds of work was to any extent impaired, he was entitled to compensation for total disability. Under that rule disability was assessed mainly in terms of the workman's customary occupation. Under Osborne it is assessed in terms of his overall capacity to earn a living. In keeping with this approach, that the injured workman is able to continue in his usual work does not necessarily mean that his earning capacity has not been impaired, because his injury may reduce his ability to do some kind of gainful work in the future. Hence Osborne held that although a permanent injury has not affected the workman's capacity to continue in his current employment, if it is "a permanent bodily injury of appreciable proportions" it simply must be presumed to affect his over-all earning ca-

pacity as viewed in terms of future prospects.

 Now the question is whether a different policy is suggested by KRS 342.-620(9), the theme and hallmark of which may be found in the following, its first sentence:

" 'Disability' means . . . a decrease of wage earning capacity due to injury or loss of ability to compete to obtain the kind of work the employe is customarily able to do, in the area where he lives, taking into consideration his age, occupation, education, effect upon employe's general health of continuing in the kind of work he is customarily able to do, and impairment or disfigurement."

Thus far, it seems to us that the statute is quite substantially in keeping with *Osborne*. However, it is the last sentence of KRS 342.620 that prompts the claimant's argument. It reads as follows:

"An individual entitled to benefits under permanent partial disability shall be entitled to either his lost wages due to his injury, or *bodily functional disability benefits*, whichever is greater." (Emphasis added.)

According to the claimant, KRS 342.-620(9) thus defines "disability" as functional disability or occupational disability, whichever is the greater. We cannot agree. The answer, we think, lies in the word "benefits." Bodily functional *disability* is not one and the same as bodily functional disability *benefits*. The latter term, used in the statute, can mean nothing other than "benefits allowable by reason of bodily functional disability" vis-a-vis lost wages. We conclude that there is nothing in this particular subsection of the statutes that modifies the principle stated in *Osborne*.

 With this conclusion established, the case is governed by *Harry Gordon Scrap Materials, Inc. v. Davis*, Ky., 478 S.W.2d 731 (1972), in which the workman suffered a permanent functional impairment of 10% to the body as a whole but was able to continue in his regular employment. As in the case here under consideration, there was no other evidence to support a finding that a future impairment of earning power was probable. Cf. 478 S.W.2d at p. 733. For that reason a judgment sustaining an award for permanent partial disability was reversed. According to the same rationale, the action of the board in declining to make an award for permanent partial disability in this case was proper.

The judgment is affirmed.

All concur.