**Richard H. COOK, Appellant,**

v.

**PADUCAH RECAPPING SERVICE; John Calhoun Wells, Secretary of Labor Cabinet (Special Fund), and Workers' Compensation Board, Appellees.**

Supreme Court of Kentucky.

May 23, 1985.

Rehearing Denied Sept. 5, 1985.

David Sparks, Williams, Housman, Sparks & Franklin, Paducah, for appellant.

Donald Brown, Jr., Boehl, Stopher, Graves & Deindoerfer, Paducah, Gemma Harding, Louisville, Jackie Blankenship, Frankfort, for appellees.

VANCE, Justice.

The question is whether a worker who has sustained a work-related functional impairment to the body as a whole which does not result in any occupational disability under the standards set forth in K.R.S. 342.-620(12) and in *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968), is entitled under K.R.S. 342.730(1)(b) to an award based solely upon his functional impairment.

This is an appeal, transferred directly to this court, from a judgment of the McCracken Circuit Court which affirmed an award of the Workers' Compensation Board.

The appellant, Richard Cook, alleges that he sustained a work-related injury to his back resulting from frequent bending and heavy lifting required by his job. Two physicians testified that their examination revealed no impairment to the body as a whole. They made no mention of whether their testimony was based upon the American Medical Association "guides to the evaluation of permanent impairment" 1977 edition referred to in K.R.S. 342.730(1)(b).

Another physician testified that his examination, using the American Guidelines for evaluation, revealed a 13% permanent impairment to the body as a whole.

Appellant contends the testimony as to the 13% permanent impairment to the body is uncontradicted for the reason that the doctor who found this impairment used the guidelines required by the statute, and even though two other doctors found no impairment, they did not indicate they used the American Medical Association guidelines as a standard for their evaluations.

The Workers' Compensation Board determined that appellant had not sustained an injury of appreciable proportions and had not sustained any occupational disability as defined in K.R.S. 342.620(12). The Board made no findings relating to functional impairment and made no award of benefits based upon functional impairment.

Appellant contends the Board was required to find that appellant suffered a 13% functional impairment and was required by K.R.S. 342.730(1)(b) to award benefits because of the functional impairment. It is not necessary for us, at this time, to consider appellant's contention that the Board was required to find some percentage of permanent functional impairment because, even if that is so, the Board could not award benefits to appellant unless he had sustained some occupational disability.

Prior to the decision in *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968), the award of benefits for permanent partial disability was determined, in large measure, on the basis of the extent the worker was disabled from performing the work he was customarily able to do.

*Osborne v. Johnson, supra*, shifted the focus to a determination of loss of "earning capacity" and mandated that workers' compensation awards be based upon occupational disability.

"[2] We start with acceptance of the proposition that 'disability' as used in the workmen's compensation law means *occupational* disability as distinguished from *functional* disability (mere bodily impairment).

. . . .

"[3] If occupational disability is the basis for compensation and if, as seems clear, it means impairment of earning capacity, it would seem that all that need be determined in a compensation case, as concerns disability, is: To what extent has the injured workman's earning capacity been impaired? And it would seem that this would involve only these determinations: (1) What kind of work normally available on the local labor market was the man capable, by qualifications and training, of performing prior to injury; (2) what were the normal wages in such employment; (3) what kind of work normally available on the local labor market is the man capable of performing since his injury; and (4) what are the normal wages in such employment?

. . . .

"[4–6] Under the foregoing concept *medical percentages* are not determinative. The real question is: How much less money can the injured workman command in the labor market? The doctors' testimony should be addressed to the question of what job requirements the injured man is physically capable of performing (taking into consideration his qualifications and training). The board's determination of the extent to which the man's earning capacity is impaired then should be made on the basis of evidence as to the existence, in the local area or region, of regular employment opportunities for the type of work the medical testimony shows the man is capable of performing, and the prevailing wage rates in such employment.

"[7] If the board finds that the workman is so physically impaired that he is not capable of performing any kind of work of regular employment, or if the board finds that regular employment in the kind of work the man can perform is not available on the local labor market, the man will be considered to be *totally* disabled. Otherwise he will be considered to be only *partially* disabled. And the *percentage* of his partial disability will be determined by the ratio of the prevailing wage rates in the kind of employment available to him, to the wage rates earnable by him before being injured.

"It will be noticed that in the rule here outlined no significance is given to the workman's *usual occupation* other than that the *wages* earned by him in that occupation before injury are a factor in determining his pre-injury wage capacity for comparison with his post-injury wage capacity."

*Osborne, supra* at 802, 803, 804.

In 1972, the General Assembly amended the workers' compensation statute and defined "disability" as follows:

"(9) 'Disability' means, except for purposes of subsection (1)(c) of Section 14 relating to scheduled losses, a decrease of wage earning capacity due to injury or loss of ability to compete to obtain the kind of work the employe is customarily able to do, in the area where he lives, taking into consideration his age, occupation, education, effect upon employe's general health of continuing in the kind of work he is customarily able to do, and impairment or disfigurement."

Acts of the General Assembly, 1972, Chapter 78, § 2.

In 1972, the General Assembly also enacted K.R.S. 342.730 providing income benefits for *disability*.

"(b) In all other cases of permanent partial *disability*, including any disfigurement which will impair future usefulness or occupational opportunities of the injured employe, or employe disabled by an occupational disease, compensation shall be determined according to the percentage of *disability*, taking into account, among other things, any previous disability, the nature of the physical injury or disfigurement, the occupation of the injured employe and age at the time of injury or at the time the disability from an occupational disease began. The compensation paid therefor shall be 55 per cent of the average weekly earnings of the employe at the time of his

injury and two and one-half percent of his average weekly wage at the time of injury for each dependent up to a maximum of three, subject to the limitations contained in Section 15, multiplied by the percentage of disability caused by the injury or occupational disease; provided, however, the individual entitled to benefits under permanent partial *disability* shall be entitled to compensation based on lost wages or body functional disability benefits, whichever is greater." [Emphasis ours.]

Acts of the General Assembly, 1972, Chapter 78, § 14.

■ Even though this statute authorized an award to a worker based upon body functional disability benefits or occupational disability, whichever is greater, it is clear from the title and from the language of the statute itself that the option to receive the higher of the two benefits arose only in cases of permanent, partial *disability*. Disability as defined in K.R.S. 342.620 means occupational disability, and in the absence of some occupational disability, the enactment of K.R.S. 342.730(1)(b) did not authorize an award based upon functional impairment. We so held in *Couliette v. International Harvester Co.*, Ky., 545 S.W.2d 936 (1976).

■ Subsequent to our decision in *Osborne v. Johnson, supra*, and *Couliette v. International Harvester Co., supra*, K.R.S. 342.620 and K.R.S. 342.730 have been amended on many occasions. In substance, however, K.R.S. 342.620(12) today defines disability in the same manner as did K.R.S. 342.620(9) in 1972. Disability still means occupational disability as distinguished from functional impairment.

K.R.S. 342.730(1)(b) now reads:

"(b) For permanent, partial *disability*, sixty-six and two-thirds (66⅔) of the employe's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by his percentage of *disability* caused by the injury or occupational disease as determined by 'guides to the evaluation of

permanent impairment,' American medical association, 1977 edition, or by his percentage of disability as determined under KRS 342.620(11), whichever is greater, for a maximum period, from the date the disability arises, of four hundred twenty-five (425) weeks." [Emphasis ours.]

The principal change in the present statute as contrasted with the statute in force at the time of our decision in *Couliette, supra*, is that the term "body functional disability benefits" has been deleted, and substituted in its place is the phrase "disability ... as determined by 'guides to the evaluation of permanent impairment,' American Medical Association, 1977 edition."

■ It has not been contended in brief or in oral argument that the guidelines referred to establish an occupational disability. Rather, they seek to standardize the evaluation of functional impairment to the body as a whole. Based upon the evaluation of the extent of functional impairment by physicians using the guidelines of the American Medical Association, it still remains the prerogative of the Workers' Compensation Board to translate the percentage of functional impairment into occupational disability, if any.

If, as in this case, the Board determined that no occupational disability exists, there can be no award of benefits even though there does exist some functional impairment.

The option to award benefits for impairment as determined by the American Guidelines by the plain wording of the statute comes into play only when an award is authorized for permanent partial *disability* and then only if the percentage of functional impairment is greater than the percentage of occupational disability.

■ It follows, then, that if no occupational disability is found to exist, the Board need make no finding as to the extent of functional disability.

We construe K.R.S. 342.730(1)(b) to mean that when the claimant has some degree of disability as defined under K.R.S. 342.620(11), *viz.*, decrease of wage earning capacity or loss of ability to compete due to his injury, then and only then is he entitled to the greater of his bodily function impairment under the guidelines or his percentage of disability under K.R.S. 342.620(11).

Appellant also asserts that the conclusion or ultimate finding of the board that appellant has not sustained any occupational disability is based upon a completely erroneous finding of fact. This contention relates to the testimony of Dr. Anthony Marrese.

Dr. Marrese, an orthopedic surgeon, testified that he performed an extensive physical examination of appellant, including the use of x-rays, a myelogram, and thermography. As a result of his examination, he concluded that the appellant "was suffering from damage to the L 4–5 disc from his repeated work-related bending and lifting."

He testified as follows:

"So based upon a reasonable degree of medical certainty, I believe the patient is suffering from a herniated or torn L4–5 disc, has subluxation; that is, slippage of a vertebra due to loss of the supporting structure of that disc, and that he has a permanent impairment to his body as a whole as a result of that. And I believe within a reasonable degree of medical certainty that that's due to his work-related activities, and to his pre-existing, dormant, nondisabling condition.

. . . .

"A. I believe he is disabled. And we have given him blood and set him up to come in for surgery.

. . . .

"Q23. Would you recommend that he refrain from any gainful employment for a period of six months to one year?

"A. Well, I would say three months would be absolute no employment; and then three months if a sedentary occupation was available for him, considering his training and experience, we might allow that. And then after six months we may allow a light duty form of work. And as to whether or not he will go back to heavy, repeated lifting or bending, that's too premature to determine at this time. I'd prefer him not to.

"Q24. You do not expect him to obtain maximum recovery then for at least six months after the surgery?

"A. A year following surgery, sir."

In its findings of fact No. 4, the Board summarized Dr. Marrese's testimony as follows:

"4. Dr. R. Anthony Marrese, an orthopedic surgeon, treated plaintiff from December 6, 1982 to December 15, 1982. Dr. Marrese diagnosed a small bulging disc at the L4/L5 level, retrolisthesis of L4 on L5 with spurring and a thorical lumbar scoliosis with the apex at L1. It was Dr. Marrese's recommendation that plaintiff should receive surgery. *Dr. Marrese stated no impairment,*" [Emphasis ours.]

Appellant contends that Dr. Marrese's testimony plainly establishes a functional impairment and asserts that a finding by the Board that "Dr. Marrese stated no impairment." is entirely false. It follows, appellant contends, that an ultimate finding of no occupational disability based upon underlying basic findings, some of which were totally false, must be reversed and remanded for a proper determination in the light of correct basic findings.

The appellee contends that the finding simply means that Dr. Marrese did not state any percentage of functional impairment and that other evidence fully supported the Board's finding that appellant has no occupational disability.

Two other physicians testified that appellant has no functional impairment. One other physician found a 13% functional impairment.

Without question, if two doctors find functional impairment and two doctors find none, the Board can make a finding of no occupational disability, either upon the ground that the Board accepts the testimo-

ny of the doctors who found no impairment or upon the ground that the functional impairment which existed did not result in any occupational disability.

Likewise here, if the Board viewed the testimony of Dr. Marrese as a finding of functional impairment, it could still have denied an award of benefits for occupational disability. The problem is created by the language "Dr. Marrese stated no impairment."

Dr. Marrese considered the appellant to be disabled and to have some permanent impairment.

The Board may have fully recognized this. On the other hand, the Board may have been under the impression that Dr. Marrese, along with two other physicians, found that appellant suffers no functional impairment to the body. We cannot tell from the record. In the event the decision of the Board was based upon an erroneous understanding of the testimony of Dr. Marrese, we cannot speculate as to what the result might have been had the Board correctly understood the import of his testimony.

The appellant is entitled to have his claim decided upon the basis of correct findings of basic facts.

The Judgment is reversed for remand to the Workers' Compensation Board for entry of a new determination of the claim and for additional findings of fact sufficient to afford appellate review of the determination.

STEPHENS, C.J., and AKER, GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., concurs by separate opinion.

LEIBSON, Justice, concurring.

I concur in result, but respectfully disagree with one facet of the Opinion.

Dr. K. Armand Fischer, a qualified orthopedic surgeon, testified to a 13% functional impairment applying the AMA Guides.

The Board made no finding as to functional impairment and did not discuss this proof.

Even though the Board found no occupational disability, KRS 342.730(1)(b), as newly amended, imposes a statutory duty on the Board to consider functional impairment. This duty requires making a finding in this respect. The case is analogous to *Jones v. Institute of Electronic Technology*, Ky., 613 S.W.2d 420 (1981), where we held in similar circumstances that the Board had a duty to make a finding. In *Jones*, we stated that the Board was required to make a finding using the enumerated benefits schedule where there was an amputation of a portion of the digits on the claimant's hand, even though it might then further find that there was no injury of appreciable proportions and no permanent partial disability.

On remand we should direct the Board to address this question and make a finding with regard to the evidence of functional impairment under the AMA Guides, and a further finding as to whether, considering this evidence, it does or does not find permanent partial disability.