Robert L. **WHITTAKER**, Director of Special Fund, Appellant,

v.

Larry **JOHNSON**; Trane Company; Richard H. Campbell, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 98–SC–909–WC.

Supreme Court of Kentucky.

March 25, 1999.

---

David W. Barr, Labor Cabinet—Special Fund, Louisville, for Appellant.

Gregory Ward, Lexington, for Appellee Johnson.

Kimberly Newman, Clark, Ward, & Cave, Lexington, for Appellee, Trane Co.

## OPINION OF THE COURT

This appeal concerns whether the version of KRS 342.730(1)(b) which became effective April 4, 1994, permits an award of income benefits without a showing of actual occupational disability. *Acts,* 1994, Ch. 181, § 25.

■ Claimant sustained a back injury in 1995 which resulted in a 5% functional impairment pursuant to the American Medical Association's *Guides to the Evaluation of Permanent Impairment (Guides)*. After the injury, he returned to light duty work at full wages. The Administrative Law Judge (ALJ) who considered this workers' compensation claim determined that claimant's injury had not resulted in any appreciable degree of permanent occupational disability, that half of the 5% functional impairment was active before the injury, and that claimant was entitled to income benefits based upon a 2.5% functional impairment. The defendants appealed the decision in reliance upon *Cook v. Paducah Recapping Service,* Ky ., 694 S.W.2d 684 (1985); however, the Workers' Compensation Board (Board) affirmed in a two-to-one decision. The Court of Appeals affirmed, and this appeal followed.

■ Even as early as the Workers' Compensation Act of 1916, the purpose of workers' compensation legislation in Kentucky has been to compensate injured workers for "disability for work" and for an impairment to their "future usefulness or occupational opportunities." *Acts,* 1916, Ch. 33, § 16, § 18. The practice of using the term "disability" to refer to a physical impairment (functional disability) as well as to an occupational loss (occupational disability) has long been a source of dispute. See *McCown v. Hellier Elkhorn Coal Company,* Ky., 399 S.W.2d 719 (1966); *Kilgore v. Goose Creek Coal Company,* Ky., 392 S.W.2d 78 (1965); *Deby Coal Company v. Caldwell,* Ky., 383 S.W.2d 905 (1964); *Clark v. Gilley,* Ky., 311 S.W.2d 391 (1958); *Department of Mines and Minerals v. Castle,* Ky., 240 S.W.2d 44 (1951); *Olson v. Triplett,* Ky., 255 Ky. 724, 75 S.W.2d 366 (1934).

Historically, Chapter 342 contained a schedule of benefits, commonly known as "price tag" benefits, which authorized a specified amount of compensation based upon the loss of particular body parts or functions; however, it also permitted a greater award based upon a finding of greater occupational disability. In *Osborne v. Johnson,* Ky., 432 S.W.2d 800 (1968), when addressing a computation formula in which the amount of the income benefit for permanent, partial disability was based upon the worker's "percentage of disability" rather than upon a schedule of benefits, the Court emphasized its adherence to the established principle that for the purposes of workers' compensation, the term "disability" referred to "*occupational* disability as distinguished from *functional* disability (mere bodily impairment)." *Id.* at 802.[1]

---

1. *Osborne v. Johnson* addressed those permanent, partial disabilities which were compensable under KRS 342.110. See also, footnote 1 in which the Court noted that the "loss of mem-

In 1972, the legislature undertook a major revision of Chapter 342, as a result of which the earlier provisions for income benefits were repealed. *Acts,* 1972, Ch. 78, § 36. The 1972 amendments codified the decision in *Osborne v. Johnson* into a definition of the term "disability" as occupational disability. Acts, 1972, Ch. 78, § 2. The version of KRS 342.730(1)(b) which was enacted in 1972 provided that workers entitled to receive income benefits for permanent, partial disability should be compensated "based on lost wages or body functional disability benefits, whichever is greater." KRS 342.730(1)(c) contained a schedule of benefits based upon the total and permanent loss of particular body parts or functions. *Acts,* 1972, Ch. 78, § 14.

In 1980, KRS 342.730 was amended again. *Acts,* 1980, Ch. 104, § 15. From then until April 4, 1994, only KRS 342.730(1)(b) addressed the payment of income benefits "For permanent, partial disability." The formula for computing income benefits which was set forth in the 1980 version of KRS 342.730(1)(b) gave two alternative methods for computing the amount of the benefit. One method was based upon the definition of "disability" which was contained in KRS 342.620 [now KRS 342.0011(11)]. Although the *Guides* explicitly addressed the evaluation of "impairment," not "disability," the other method set forth in KRS 342.730(1)(b) was based upon the "percentage of disability" as determined by the *Guides.* KRS 342.730(1)(c), the last "price tag" section of the Act, was repealed at that time. Nonetheless, in part due to the wording of KRS 342.730(1)(b), the concept that an income benefit might be based solely upon a functional impairment/disability, without any evidence of either a present or future occupational disability, remained alive.

The use of the word "disability" in the 1980 amendment to KRS 342.730(1)(b) was at issue in *Cook.* There, the Court was asked to consider whether KRS 342.730(1)(b) permitted a worker who sustained a work-related functional impairment which did not result in any occupational disability to receive an award for permanent, partial disability based solely upon the functional impairment. *Cook* established that, regardless of KRS 342.730(1)(b)'s subsequent reference to the *Guides,* a finding of occupational disability was required for all awards "For permanent, partial disability." In other words, the Court determined that an award which indicates that it is for permanent, partial disability must be based upon a showing of occupational disability; whereas, the amount of compensation for permanent, partial disability was based upon the worker's functional impairment unless a greater occupational disability was shown. The Court indicated that, although the statutory definition of "disability" permitted the consideration of other factors in determining the extent of a worker's occupational disability, the primary consideration was the extent to which the worker's earning capacity had been reduced by the work injury. *Id.* at 686.

At all times pertinent to this claim, the definition of "disability" contained in KRS 342.0011(11) was substantially the same as that at issue in *Cook.* As was recognized in *Cook,* the definition specifically refers to "a decrease of wage earning capacity or loss of ability to compete" but also includes the consideration of other factors, leaving it to the ALJ to translate evidence of a worker's functional impairment into a finding of occupational disability. Historically, the fact-finder has been given great leeway in doing so. See *Coleman v. Eastern Coal Corporation,* Ky.App., 913 S.W.2d 800 (1995); *Seventh Street Road Tobacco Warehouse v. Stillwell,* Ky., 550 S.W.2d 469 (1976); *Adkins v. Caney Branch Coal Co.,* Ky., 459 S.W.2d 771 (1970). Even in instances where an award has appeared to a reviewing court to be overly generous, the standard of review for findings of fact has permitted such findings to be reversed on appeal only if the evidence compelled a smaller award. See *Special Fund v. Francis,* Ky., 708 S.W.2d 641 (1986).

As amended in 1994, KRS 342.730 provides, in pertinent part, as follows:

(b) For permanent, partial disability, where an employee returns to work at a wage equal to or greater than the employee's preinjury wage, sixty-six

---

bers" compensation provided "for enumerated permanent partial disabilities" by KRS 342.105

was "purely arbitrary" and "not based on any concept of occupational disability."

and two-thirds percent (66 2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by his percentage of impairment caused by the injury or occupational disease as determined by "Guides to the Evaluation of Permanent Impairment," American Medical Association, latest edition available, unless the employee establishes a greater percentage of disability as determined under KRS 342.0011(11), in which event the benefits shall not exceed two (2) times the functional impairment rate, for a maximum period, from the date the disability arises, of four hundred twenty-five (425) weeks subject to the provisions of subsection (1)(d) of this section....

(c) For permanent, partial disability, except all cases described in subsection(1)(b) of this section, sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by his percentage of disability caused by the injury or occupational disease as determined by the "Guides to the Evaluation of Permanent Impairment," American Medical Association, latest edition available, or under KRS 342.0011(11), whichever is greater for a maximum period from the date the disability arises, of four hundred twenty-five (425) weeks, subject, however, to the provisions of subsection (1)(d) of this section....

(d) For permanent, partial disability, if an employee sustains impairment or disability in excess of fifty percent (50%) as a result of a work-related injury or occupational disease and prior work-related active disability the compensable permanent partial disability period shall then be five hundred twenty (520) weeks from the date the impairment or disability exceeding fifty percent (50%) arises....

A comparison with the pre-amended statute reveals that the 1994 version contains three subsections, the purpose of which is the payment of income benefits "For permanent, partial disability." With minor revisions, the former subsection (1)(b) became subsection (1)(c). It explicitly pertains to all cases except those described in the amended subsection (1)(b), but the language upon which the decision in *Cook* was based remains. We conclude, therefore, that the legislature viewed the decision in *Cook* as consistent with its intent: 1.) that a finding of occupational disability would be the basis for a permanent, partial disability award, and 2.) that the amount of compensation to which the worker was entitled would be based upon the worker's functional impairment unless a greater occupational disability was shown.

The amended version of subsection (1)(b), which is at issue in this appeal, applies to those injured workers who have sustained a permanent functional impairment as determined by the *Guides* and who return to work at a wage equal to or greater than the pre-injury wage. Although this group of workers experiences no present wage loss, its members may or may not suffer a decrease in their earning capacity or their ability to compete for other employment should the present employment end. The source of the present controversy is that, unlike the computation formula contained in subsection (1)(c), the computation formula contained in subsection (1)(b) specifically refers to the percentage of "impairment" as determined by the *Guides*. We observe that subsection (1)(b) also permits a worker to establish a greater percentage of "disability" pursuant to KRS 342.0011(11) but limits the maximum benefit to two (2) times the "functional impairment rate." The duration of an award pursuant to subsection (1)(b) or subsection (1)(c) is 425 weeks, subject to the provisions of subsection (1)(d). The third subsection addressing permanent, partial disability, subsection (1)(d), permits an award of 520 weeks' duration to those workers with a work-related "impairment or disability in excess of 50%."

Having reviewed these provisions and the arguments of the parties, we note that each of the three provisions begins with the phrase, "For permanent, partial disability." We note that the term "disability" is clearly

defined in KRS 342.0011(11) as occupational disability and that use of the term "impairment" in KRS 342.730(1)(b) occurs in the formula for computing the amount of the permanent, partial disability benefit. Finally, we note that both in 1980 and in 1994 the *Guides* referred to the evaluation of permanent functional "impairment" which the decisions in *Cook* and in *Osborne v. Johnson* both explained had often been referred to as functional "disability." Therefore, although we agree with the premise of the Board's majority opinion, that the apparent purpose of the 1994 amendment to KRS 342.730(1)(b) was "to prevent large awards of income benefits to claimants who have no present loss of income," our conclusion with regard to the intended operation of the amendment is different.[2]

■ It is undisputed that the legislative purpose of the 1994 amendment was to limit the amount of compensation which was paid to those workers with no present loss of income. Under those circumstances, we regard it as unlikely that the legislature intended to permit awards to workers who suffered no occupational disability whatsoever when it was unnecessary to do so in order to accomplish that goal. This is particularly true in view of the fact that such awards were not permitted before the amendment and in view of the fact that a finding of occupational disability is permitted by KRS 342.0011(11), even where the worker has suffered no present wage loss. Considering the premise underlying the decision in *Cook*, considering the fact that the word "impairment" is not used in describing the purpose of the award but in the formula for computing the amount of the award, and considering the apparent purpose of the 1994 amendment, we conclude that the legislature's choice of the word "impairment" rather than "disability" in the formula for computing an award pursuant to KRS 342.730(1)(b), although a more precise choice of language, was a distinction without a practical difference.

■ Just as KRS 342.730(1)(c) [formerly KRS 342.730(1)(b) ] requires the worker to

have sustained at least some occupational disability as a threshold requirement for becoming entitled to an award of income benefits for permanent, partial disability, the amended version of KRS 342.730(1)(b) requires the worker to have sustained at least some occupational disability before becoming entitled to such an award. The formula for computing the minimum amount of an award pursuant to both subsections utilizes the figure for functional impairment which is determined by the *Guides*. The difference between subsections (1)(b) and (1)(c) is that in those instances where a worker can demonstrate a greater occupational disability but has suffered no present wage loss, the maximum award is limited to two times the worker's functional impairment.

The decision of the Court of Appeals is hereby reversed. The ALJ's conclusion that the evidence in this case did not support a finding of occupational disability is undisputed; therefore, the claim is remanded for further proceedings which are consistent with that finding.

All concur.

---

**2.** Claimant's and the Court of Appeals' reliance on *City of Paintsville v. Ratliff,* Ky., 889 S.W.2d 784 (1994), for the proposition that an award based solely upon functional impairment was authorized by the 1994 amendment is misplaced.

Furthermore, the claim at issue in *Ratliff* arose before the effective date of the amendment, rendering any discussion of the amendment mere dicta.