# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 29, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0239-WC

JBS SWIFT                                                         APPELLANT

|  | ON APPEAL FROM COURT OF APPEALS |  |
|---|---|---|
| v. | NO. 2019-CA-1670 |  |
|  | WORKERS' COMPENSATION BOARD NO. WC-18-00878 |  |

LYNN FIELDS; HON. CHRISTINA D.                      APPELLEES
HAJJAR, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

JBS Swift appeals from the Court of Appeals' decision upholding an Administrative Law Judge's (ALJ) award of permanent partial disability benefits, temporary total disability benefits, and medical benefits. JBS Swift argues that the ALJ erred by making findings not supported by substantial evidence and exceeded the scope of her authority by forming a medical opinion. Because the ALJ's findings were supported by substantial evidence, and she did not exceed the scope of her authority, we disagree. For the reasons stated below, we affirm the Court of Appeals.

# FACTS AND PROCEDURAL HISTORY

Lynn Fields began working for JBS Swift, a pork processing facility, in August 1996 as a sanitation supervisor. Thereafter, he moved to various supervisory positions. Most recently he worked as a supervisor in the casing department. On June 6, 2016 Fields was assigned to the kill floor because JBS Swift was short staffed. Fields explained that working on the kill floor was much more physically demanding than his regular position, which usually required him to lift up to forty pounds. In the kill room he had to pick up hogs that weighed up to 165 pounds. While using long hooks to pull hogs that had fallen off the processing rail to the kill floor he slipped in pooled blood, causing him to fall on three occasions that day. The first time he fell he landed on the concrete floor on his left side. During the second and third falls he landed on his left side and low back. Fields reported his injury to health services and his general foreman, but he did not immediately seek medical treatment for his injury and continued to work.

On June 12, 2016 Fields experienced increased, radiating hip and leg pain and had his son take him to the emergency room. The medical records from his emergency room visit state he suffered from left hip pain, although Fields testified he was also experiencing low back pain at the time. Fields did not seek any further medical treatment until he went to U.S. HealthWorks at the end of June. On that date, personnel gave him muscle relaxers and referred him to Frazier Rehab Institute. He stated that at that time he was

2

experiencing constant pain, numbness and tingling in his left leg and low back pain. He received physical therapy which helped some.

Fields underwent surgery on July 13, 2016 on his left foot for a condition unrelated to the work incident. He was off work due to that foot surgery until September 12, 2016. When he returned to work he experienced leg, hip and low back pain. As a result, he only worked three or four more days with JBS Swift after his foot surgery. A September 2016 MRI revealed two disc herniations in his lower back. A month later he began treating with Dr. Kimathi Doss, a neurosurgeon, who recommended physical therapy and epidural injections. During a follow-up visit in March 2017 Fields reported excruciating back pain and unbearable left leg pain.

Because the conservative treatments offered little relief, Dr. Doss performed a lumbar fusion and discectomy at L5-S1 on November 29, 2017. Fields testified that after the surgery he has not experienced leg pain, but still has muscle spasms in his legs, tingling in his feet and constant low back pain. He also testified that he is unable to lift, sit, or stand for long periods of time and does not believe he is capable of returning to his pre-injury job either as a casing department supervisor or kill floor supervisor.

Fields filed a workers' compensation claim on June 4, 2018. He underwent independent medical evaluations by Dr. Mark Barrett and Dr. Russell Travis. Dr. Barrett assessed a 26% whole person impairment and opined that Fields's symptoms and the lumbar fusion surgery were causally related to the work injury. Dr. Travis assessed a 22% whole person

3

impairment but did not believe Fields's condition was a result of the work injury.

On April 19, 2019 the ALJ entered an Opinion and Order concluding that Fields sustained a low back and left hip/leg injury requiring a lumbar fusion. The ALJ relied on Dr. Barrett's opinion that attributed Fields's injury to the June 6, 2016 falls at work. She assessed a 22% impairment rating, as assigned by Dr. Travis, and applied the 3 multiplier pursuant to Kentucky Revised Statute (KRS) 342.730(1)(c)1 due to his inability to return to the work he was performing at the time of his injury and increased the multiplier by 0.6 because Fields was sixty years old at the time of the injury, KRS 342.730(1)(c)3, for a total enhancement of 3.6.[1] The ALJ awarded temporary total disability benefits, permanent partial disability benefits and medical expenses. JBS Swift filed a petition for reconsideration requesting additional findings of fact as to causation and work-relatedness. The ALJ denied the petition, stating that JBS Swift was asking the ALJ to reweigh the merits of the claim which did not satisfy the standard for reconsideration.

On appeal the Workers' Compensation Board (the Board) held that the ALJ did not err in her analysis of the medical evidence. JBS Swift argued that Fields first complained of hip and leg pain in September 2016 and therefore

---

[1] Dr. Barrett conceded that his impairment rating assessment was conducted three months prior to "the date that patients are as good as they are going to get after the surgery." Therefore, the ALJ relied on Dr. Travis's impairment rating because Dr. Travis placed Fields at maximum medical improvement as of the date of his evaluation, which was September 19, 2018.

that injury was unrelated to the work injury that occurred three months prior. The Board found, however, that Fields complained of left hip and leg pain as early as June 30, 2016, and that the ALJ properly relied on Dr. Barrett's findings and opinions contained in his report and reaffirmed by his deposition testimony. As to Dr. Travis, the Board observed that he ignored portions of the Frazier Rehab notes because he only summarized one of the nine pages of the records from Frazier Rehab. Consequently, the ALJ's rejection of Dr. Travis's opinion was reasonable and supported by the record. Having reviewed the record, the Board concluded that the ALJ's findings were amply supported by substantial medical evidence.

Addressing JBS Swift's appeal, the Court of Appeals concluded that the ALJ did not err in relying on Dr. Barrett's opinion, nor did the Board err in affirming the ALJ's Opinion, Order and Award. Substantial medical evidence supported the ALJ's factual findings regarding Fields's medical conditions.

## **ANALYSIS**

Before this Court, JBS Swift continues to argue that the ALJ based her opinion on inaccurate facts and that she exceeded the scope of her authority by determining when Fields's radiculopathy[2] began. After review, we reject both of these arguments.

---

[2] "Radiculopathy describes a range of symptoms produced by the pinching of a nerve root in the spinal column." Johns Hopkins Medicine, *Radiculopathy,* https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy (last visited Apr 9, 2021). The symptoms vary by location in the spine, but frequently include pain, weakness, numbness and tingling. *Id.*

## I.     The ALJ properly relied on substantial medical evidence.

"[W]here the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion." *Whittaker v. Rowland,* 998 S.W.2d 479, 481 (Ky. 1999). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367, 369 (Ky. 1971).  Fields had the burden of proof before the ALJ, so we must determine whether the ALJ's Opinion and Order was supported by substantial evidence.  JBS Swift must show that no evidence of substantial probative value supports the ALJ's decision.  *Special Fund v. Francis,* 708 S.W.2d 641 (Ky. 1986).

JBS Swift asserts that the parties are entitled to have their claims "decided upon the basis of correct findings of basic facts." *Cook v. Paducah Recapping Serv.,* 694 S.W.2d 684, 689 (Ky. 1985).  Additionally, "[w]hen a physician's opinion is based on a history that is 'substantially inaccurate or largely incomplete,' that opinion 'cannot constitute substantial evidence.'" *Eddie's Serv. Ctr. v. Thomas,* 503 S.W.3d 881, 887 (Ky. 2016) (quoting *Cepero v. Fabricated Metals Corp.,* 132 S.W.3d 839, 842 (Ky. 2004)).  JBS Swift takes issue with Dr. Barrett's report, claiming he revised and changed his medical opinion during his deposition.  Dr. Barrett's report was significant to the ALJ's disposition of the claim because she relied on it to conclude that Fields sustained a work-related injury.  She also found Fields's testimony credible. JBS Swift insists that Dr. Barrett changed his medical opinion during his

deposition, rendering the ALJ's reliance on his report in awarding benefits improper. We reiterate that the ALJ, as fact-finder, has the sole authority to determine the quality, character and substance of the evidence. *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993).

In generating his report Dr. Barrett, an emergency room physician and general surgeon, reviewed Fields's medical history and records. He diagnosed Fields with lumbar pain with radicular symptoms status post L5-S1 fusion following his slip and fall injury at work. Due to his persistent symptoms Dr. Barrett evaluated Fields using the range of motion method according to the Fifth Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* and assessed a 26% whole person impairment. Dr. Barrett also opined that Fields could not return to the work he was doing at the time of his injury and restricted him from lifting above ten pounds.

Upon examination Dr. Barrett noted that Fields was leaning forward and to the side because of lumbar pain and had a decreased range of motion in the left hip. Dr. Ashok Alur, a physician at a local medical clinic, initially treated Fields for his foot issue, but also saw him for issues related to the work injury. Dr. Barrett noted Dr. Alur's September 15, 2016 note that the back pain began "three days ago," but Dr. Barrett also reported that Fields explained the reference was inaccurate and that he actually told Dr. Alur the pain began three months prior, not three days prior. After reviewing Fields's medical records and examining him, Dr. Barrett opined that Fields "had a new onset of back pain with radicular symptoms that got progressively worse after a fall on

7

June 6, 2016, while at work." He concluded that the work fall was a "direct and precipitate case of his subsequent clinical course and therapeutic care . . . ."

JBS Swift focuses its argument on the medical records, asserting that Fields did not experience radiculopathy in his hip until September 2016 based on Dr. Alur's note. Dr. Alur's September 15 treatment note stated that Fields reported waking up and bending over to retrieve something when he experienced a significant back spasm that nearly caused him to fall to the floor. JBS Swift further highlights a September 12, 2016 U.S. Healthworks visit note stating Fields had pain radiating into the left lower extremity. JBS Swift proposes that, based on these records, September 12, 2016 was the actual onset of Fields's hip and back pain. Our review of the record does not support this conclusion.

A June 30, 2016 U.S. Healthworks note states Fields "injured left hip 4 weeks ago . . . " and that his chief complaint regarded his hip and leg. A note from a July 1, 2016 visit to Frazier Rehab indicates that on that date Fields's chief complaint was left hip pain from a slip and fall injury. The same records also indicate the date of onset as June 6, 2016, the date of Fields's falls at JBS Swift's pork processing facility. Additionally, notes from a July 7, 2016 visit to Frazier Rehab reflect that Fields reported hip, low back and left leg pain. He reported the same symptoms again on July 12. Obviously all of these documented instances predate the September 12 date for onset posited by JBS Swift.

8

Dr. Barrett's report constitutes substantial evidence as to Fields's work-related injury. In addition to her reliance on Dr. Barrett's opinion, the ALJ determined that "Fields was credible and consistently reported to his doctors that the falls on June 6, 2016 were the precipitating cause of the onset of his low back and left hip/leg symptoms." Fields testified that after the falls he experienced pain on his "side and back area." He also estimated that approximately a week after the falls, so well before September 12, he experienced shooting pain in his legs.

While the initial medical records from U.S. Healthworks and Norton Emergency Room focus primarily on the hip, Fields's testimony and medical records from Frazier Rehab clearly indicate that his low back was also hurt on the day of the work injury and that he experienced pain in that area about a week later. "[T]he ALJ's findings of fact are entitled to considerable deference and will not be set aside unless the evidence compels a contrary finding." *Finley v. DBM Technologies*, 217 S.W.3d 261, 264 (Ky. App. 2007). Sufficient medical evidence supported the ALJ's finding that the three June 6 falls at work caused Fields's injury and symptoms. Arguably Dr. Alur's note could support a finding that certain symptoms did not begin until September 2016 and were a result of Fields bending to retrieve something at home and having a back spasm. However, "[a]lthough a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal." *Ira A. Watson Dep't Store v. Hamilton,* 34 S.W.3d 48, 52 (Ky. 2000) (citing *McCloud v. Beth-Elkhorn Corp.,*

9

514 S.W.2d 46 (Ky. 1974)).  This single treatment note, which Fields asserts was inaccurate based on the history he provided to Dr. Alur, does not constitute grounds for reversal.

"[A] finding which can reasonably be made is, perforce, not clearly erroneous.  A finding which is unreasonable under the evidence presented is 'clearly erroneous' and, perforce, would 'compel' a different finding."  *Francis*, 708 S.W.2d at 643.  The ALJ reasonably relied on substantial medical evidence to support her conclusions.

Related to the first argument JBS Swift also asserts that the ALJ improperly determined when Fields's radiculopathy began, a conclusion that is squarely within the province of medical experts.  The ALJ concluded: "This ALJ relies upon Dr. Barrett to find that Fields sustained a work-related injury on June 6, 2016, to his low back and left hip/leg, which resulted in the fusion surgery."  JBS Swift asserts that the obvious inference from this statement is that the leg pain association with radiculopathy began on June 6.  JBS Swift argues that this amounts to the ALJ relying on an incorrect history of symptoms and arriving at an incorrect diagnosis.

This Court has held that a medical opinion regarding causation based upon an inaccurate set of facts does not constitute substantial evidence.  *Cepero,* 132 S.W.3d 839.  However, the facts relied upon by the ALJ were not incorrect and substantial medical evidence supported the finding that the June 6 work injury led to Fields's symptoms and subsequent surgery.

10

JBS Swift focuses particularly on when Fields's medical records use the term "radiculopathy," but that is not determinative of causation. As Dr. Barrett acknowledged, and JBS Swift concedes, hip and leg pain do not necessarily equate to radiculopathy. A diagnosis of radiculopathy is certainly not a requirement to Fields's receiving workers' compensation benefits, nor is it relevant to the validity of the ALJ's opinion as to causation. JBS Swift's arguments would require that, for the lumbar fusion surgery to be compensable, there must be treatment notes from the date of injury documenting immediate onset of lumbar radiculopathy. This is simply not a prerequisite to compensability.

Further, as noted by the Court of Appeals, though Fields was first diagnosed with radiculopathy on September 12, 2016, that does not necessarily mean he first experienced radiculopathy on that date. Dr. Barrett acknowledged this in his medical report and again in his deposition. Additionally, other medical records, noted above, state that Fields complained of hip and back pain prior to September 12, 2016. Dr. Barrett also acknowledged his conversation with Fields regarding his medical history in which Fields explained that Dr. Alur's September 15, 2016 record with a history stating he only started experiencing hip and low back pain on September 12, 2016 was inaccurate. While September 12, 2016 may have been the first time Fields was officially diagnosed with lumbar radiculopathy, it is apparent that his radicular symptoms had been present since the June 2016 falls at work.

11

JBS Swift also maintains that Dr. Barrett clarified, during his deposition testimony, that the onset of leg pain indicated when radiculopathy began and that medical records confirm there was no evidence of leg pain associated with radiculopathy until September 12, 2016. Again, we note that the July 7, 2016 Frazier Rehab records stated that Fields reported leg pain on that date and again on July 12. A U.S. Healthworks record from a June 30, 2016 visit states that Fields was experiencing tenderness of the left thigh. These records certainly support that his left leg pain began well before September 12.

> It is the quality and substance of a physician's testimony, not the use of particular "magic words," that determines whether it rises to the level of reasonable medical probability, i.e., to the level necessary to prove a particular medical fact. Where there is conflicting medical testimony concerning the cause of a harmful change, it is for the ALJ to weigh the evidence and decide which opinion is the most credible and reliable.

*Brown-Forman Corp. v. Upchurch,* 127 S.W.3d 615, 621 (Ky. 2004) (citing *Turner v. Commonwealth,* 5 S.W.3d 119, 122–23 (Ky. 1999)). The ALJ did not rely on an inaccurate set of facts in rendering her opinion.

Both arguments in JBS Swift's appeal are premised on the allegation that Dr. Barrett corrected his report, changed his testimony, or revised his findings. But Dr. Barrett did not amend any of the conclusions in his medical report and certainly did not revise his opinion that the work injury necessitated the lumbar fusion surgery. At his deposition, Dr. Barrett was simply asked to confirm the contents of Dr. Alur's medical records which suggested Fields's hip and back pain started in September 2016. As noted, this easily could have been Dr. Alur's error as Fields explained to Dr. Barrett that he reported the

12

pain began three months ago, i.e., in June, not three days ago.  Dr. Barrett simply discussed the contents of Dr. Alur's notes and explained an apparent discrepancy in what Fields reported and what Dr. Alur noted.  He did not change his opinion.

Moreover, the ALJ did not form her own medical diagnosis but rather relied on Dr. Barrett in reaching her conclusions.  Dr. Barrett noted twice that the falls at work precipitated the fusion surgery.  His acknowledgment of other medical records from other physicians during his deposition does not equate to recanting his previous opinion.  In fact, during Dr. Barrett's deposition he confirmed that he stood by the opinions stated in his original report.  The ALJ's reliance on Dr. Barrett's medical opinions was not misplaced, and the Board did not impermissibly supplement the ALJ's findings by citing additional evidence from the record in support of her conclusions.  The Board's role in reviewing an ALJ's decision is to determine whether the findings are so unreasonable under the evidence that they must be reversed as a matter of law.  *Ira A. Watson Dep't Store,* 34 S.W.3d at 52.  The Board used the additional medical evidence to illustrate the ALJ's award was justified and, contrary to JBS Swift's argument, did not usurp the ALJ's role as fact-finder.

## CONCLUSION

We find no error in the ALJ's disposition of this case, which was affirmed by both the Board and Court of Appeals.  Accordingly, we affirm the Court of

13

Appeals' decision affirming the Board and upholding the ALJ's Opinion, Order and Award.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Walter Elliott Harding
Boehl Stopher & Graves, LLP


COUNSEL FOR APPELLEE,
LYNN FIELDS:

Pierre J. Coolen
Morgan & Morgan

ADMINISTRATIVE LAW JUDGE:

Christina Ditty Hajjar

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Director