**Luther BAKER, Appellant,**

v.

**EXPORT COAL COMPANY et al.,
Appellees.**

Court of Appeals of Kentucky,

March 13, 1970.

Albert A. Burchett, Martin, for appellant.

Fred Francis, Howard, Francis & Howard, Prestonsburg, Martin Glazer, Dept. of Labor, Frankfort, for appellees.

DAVIS, Commissioner.

The Workmen's Compensation Board denied Luther Baker's claim for compensation. He appealed to the circuit court where the Board's order was affirmed. He seeks reversal of the court's judgment and asserts that (1) he was laid off by Export on November 2, 1966, and rejected for employment by Princess Elkhorn Coal Company on November 3, 1966, based on a pre-employment physical examination disclosing pneumoconiosis and therefore is entitled to workmen's compensation as a matter of law; (2) appellees are estopped from denying that appellant has an occupational disease; (3) no substantial evidence in the record supported the Board's denial of compensation; (4) the Board abused its discretion in overruling appellant's motion for appointment of a second disinterested physician; and (5) the Board committed prejudicial error in overruling appellant's petition for reconsideration.

Appellant, age 60, has worked in underground coal mines in Kentucky for forty years. From October 1965 to November 1966 (when appellant last worked in any

mine), he worked for Export Coal and was exposed to the hazards of silicosis. Appellant contends in his brief that he was laid off by Export on November 2, 1966, but in giving his testimony he said that he continued to work a few days after November 3, and did not say that he was ever discharged or "laid off" by Export.

However, on November 3, 1966, appellant was examined by Dr. James A. Holbrook, consulting medical director for Princess Elkhorn Coal Company, looking toward employment by Princess Elkhorn. That examination was described by Dr. Holbrook as "a routine pre-employment physical examination." In testifying of the results of that examination, Dr. Holbrook said in part:

"Well, the actual physical part of the examination that I did was essentially normal. However, the laboratory procedures that we utilize in pre-employment physicals for Princess Elkhorn include an electrocardiogram and chest x-ray as a matter of routine, and the chest x-ray, which was interpreted by our radiologist and myself, showed a fine nodularity in both lung fields which we thought most likely represented coal miners' pneumoconiosis."

Dr. Holbrook explained that on the basis of the X-ray findings of nodularity and the history of appellant's having spent many years as an underground coal miner he "arrived at the conclusion that this nodularity most likely represented coal miners' pneumoconiosis" and directed rejection of appellant for employment on that ground.

When asked why he quit working for Export, appellant testified: "I found out I had silicosis and that other big word that sounds like pneumonia but it ain't." He said he learned this from Dr. Holbrook and that it was a few days afterwards that he quit for Export. The appellant did not testify that he was laid off by Export for any reason, and it is difficult to under-

stand appellant's argument in his brief that he was discharged by Export.

In addition to the testimony of Dr. Holbrook, appellant presented evidence of other doctors who opined that appellant had pneumoconiosis. Countervailing medical testimony was offered by appellees. Qualified medical men expressed the view that appellant had no evidence of compensable lung disease. An independent physician, appointed by the Board pursuant to KRS 342.315, also reported to the same effect. The Board chose to be persuaded by the medical evidence presented against appellant's claim and denied compensation.

The appellant vigorously maintains that he was entitled to compensation as a matter of law, reciting in his brief:

"Plaintiff submits that under the circumstances of this case: a 60 year old coal miner who has worked in the coal mines of Eastern Kentucky for 40 years, who has no formal education and knows no trade or occupation except underground coal mining, who is out of work, and who is rejected for employment by the coal industry because his pre-employment physical reveals him to have coal worker's pneumoconiosis, the question of whether he is entitled to compensation benefits is not a question of fact but a question of law. The only reasonable conclusion reasonable men acting reasonably can reach is that such a claimant is entitled to benefits. Any other result would defeat the purpose of the compensation act, which is, generally stated, to off-set loss of earnings."

The appellant calls attention to this court's language in Allen v. Commonwealth, Department of Highways, Ky., 425 S.W.2d 283, in which it was remarked:

"* * * so long as a man actually continues, despite an occupational disease, to satisfy the requirements of his work it can hardly be found that he cannot do it." Id. 425 S.W.2d 284.

The converse of that principle, urges the appellant, is that if the worker cannot continue to work, or is *refused* work because of an occupational disease, it can hardly be found that he does not have such a disease. In support of that premise, our attention is directed to Larson's Workmen's Compensation, Vol. 2, Section 57.61, wherein is a critical discussion of Goudie v. Lakey Foundry & Machine Company, 327 Mich. 138, 41 N.W.2d 496, in this language:

"Claimant has been exposed to dust conditions in his employer's work for the greater part of ten years. The employer required physical examinations, including lung X-rays, from time to time, and claimant had had several over the period between 1937 and 1947. One day late in 1947 claimant was discharged for failure to pass the examination, because his lungs showed streaks indicating pneumonoconiosis (sic) in an early stage. But when claimant applied for workmen's compensation, the employer presented an array of medical witnesses who testified that plaintiff's lungs were 'for all intents and purposes, healthy lungs' and claimant's counsel himself had to concede that there was no real medical disability. By a 4-to-3 decision, the Supreme Court of Michigan reversed an award of compensation.

"It is hardly necessary to labor the inconsistency of permitting an employer to fire a man for physical defects caused by his own employment conditions, and then to disclaim compensation liability by presenting medical evidence that the man is not really disabled after all. The only thing that prevents this decision from being as shocking as it appears on the surface is the circumstance that it arises under the peculiar Michigan rule that defines disability as inability to perform the work in which claimant was engaged at the time of injury."

The appellant undertakes to bring himself within the ambit of the principle enunciated by Professor Larson on the theory that the real posture of this litigation finds the coal-miner employee confronting the entire coal industry as represented by the Special Fund, which is supported by revenues derived from all coal producers. In this regard, the appellant contends that when Princess declined to employ appellant because of Dr. Holbrook's finding, it was as if the coal industry branded appellant as unfit by reason of compensable occupational disease. Apparently, appellant would equate these circumstances with a kind of "judicial admission" on the part of the entire coal industry that appellant was entitled to compensation by reason of disability stemming from occupational disease.

■ We think the argument must fail. It will be remembered that appellant was denied employment by Princess Elkhorn Coal Company on the basis of Dr. Holbrook's "routine pre-employment physical examination." There is no showing of any contractual or other legal relationship between Princess Elkhorn and Export. It is not proven that Export discharged appellant. We can perceive no basis for ascribing to the entire coal industry the isolated incident of the examination for Princess by Dr. Holbrook.

■ The second argument of appellant is related to the first in that he contends that the Special Fund is the real defendant-party in interest and that it should be estopped from presenting evidence to the effect that appellant has no occupational disease in face of his rejection by Princess Elkhorn. The same reasoning is applicable to this contention as has been stated with respect to the first one. There simply is no predicate for invoking estoppel in the circumstances presented.

■ As a third ground for reversal, appellant contends that there is no substantial evidence by which the Board could deny his claim. This argument is based on the proposition that since it is uncontradicted that appellant was rejected for employment in a coal mine because a pre-em-

ployment physical examination disclosed that he had coal miners' pneumoconiosis, it follows that appellant conclusively demonstrated total disability under Kentucky Case Law, effective when the claim was filed. (The claim was filed before the effective date of Osborne v. Johnson, Ky., 432 S.W.2d 800.) Appellant cites Clark v. Gilley, Ky., 311 S.W.2d 391; Anderson v. Whitaker, Ky., 247 S.W.2d 980; and Larson's Workmen's Compensation, Vol. 2, Section 57.00, in support of the general legal rule that a claimant who is unable to obtain employment by reason of his physical condition may be regarded as totally disabled, despite medical proof that he could perform such work if he could obtain it. In sum, appellant contends that it is an uncontradicted fact that he is unable to obtain employment because of his physical condition and therefore he is, as a matter of law, totally disabled, medical testimony to the contrary notwithstanding. This contention overlooks the fact that the Board had substantial medical evidence to the effect that appellant's inability to obtain work (if he was unable to obtain it) was not caused by any compensable disease or other condition. Appellant asks too much when he seeks to attribute irrefutable finality to the opinion of Dr. Holbrook. It is true that Princess Elkhorn rejected appellant for employment because of Dr. Holbrook's opinion, but that does not foreclose inquiry as to whether the doctor's finding was correct, nor does it require ruling as a matter of law that the entire coal industry is forever barred from questioning the *ex parte* examination by Dr. Holbrook for Princess Elkhorn.

Appellant moved the Board for appointment of a second doctor to make an examination, as prescribed in KRS 342.315, on the ground that the disinterested physician had made reference to noting an old healed fracture of a rib while no other doctor had made mention of such a finding. Appellant accompanied that motion by his affidavit that he had never sustained a rib injury to his knowledge and had never

been advised by any doctor to the contrary. We think this circumstance was not sufficient to require the Board to appoint a second doctor.

Appellant moved the Board to reconsider its opinion and order denying the award, based on the contention that the Board failed to make a finding as to whether appellant was disabled because of an occupational disease other than silicosis. The Board's ruling in this respect was neither incomplete nor ambiguous. There was no abuse of discretion in denying the motion.

The judgment is affirmed.

All concur.