**Willie J. McCRARY, Appellant,**

v.

**PHILIP MORRIS, INC., et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 5, 1971.

John Frith Stewart, Segal, Isenberg, Sales & Stewart, Louisville, for appellant.

Stewart E. Alexander, Louisville, for appellees Philip Morris, Inc. and Aetna Casualty & Surety Co.

J. Keller Whitaker, Workmen's Compensation Board, Dept of Labor, Frankfort, for appellee Workmen's Compensation Board.

EDWARD P. HILL, Jr., Judge.

The final award of the Workmen's Compensation Board gave the appellant an award for temporary total disability but disallowed his claim for permanent partial disability growing out of appellant's compound fracture of the tibia of the left leg.

Appellant William J. McCrary appealed to the circuit court where judgment was entered upholding the award of the board. We reverse.

The appellant is a 36-year-old air force veteran. During his adult life he worked as a maintenance electrician and as an airline mechanic. This work requires considerable physical exertion and dexterity.

The question on this appeal is whether or not the evidence for the appellant was so strong as to require the board to make a finding of some permanent partial disability for the appellant. This calls for a careful consideration of the evidence touching upon the effect of the appellant's injury.

The appellant testified as follows:

"Q 65 Can you now perform all the work like you could before this accident?

"A No sir.

"Q 66 Would you tell the Workmen's Compensation Board what you can't do now that you were physically capable of doing before the accident?

"A I can't climb. I can't bend over. I have to sit down if I have to do anything on the floor. Of course, I can't lift any heavy objects because it's all on one leg. I don't have any strength in my left leg.

"Q 67 What about your ability to go up and down steps?

"A It's slowed down to a snail's pace. I have to take my time.

"Q 68 What about your ability to squat?

"A    I can't squat. I have to sit down.

\*    \*    \*    \*    \*    \*

"Q 70    Is the company intentionally limiting that because of your injury?

"A    Yes.

"Q 71    Could you do the work now that you did before being employed by Philip Morris, for a contractor?

"A    No sir.

"Q 72    What about performing the regular duties that would be generally assigned to you as an aviation mechanic?

"A    I couldn't. There's a lot of tight quarters you have to get in and squat and work. I don't believe I would be capable of doing it. Heavy work, such as large wheels and things, that I couldn't handle."

Dr. Wayne W. Kotcamp was the only physician to testify on behalf of appellant. Here are the pertinent questions propounded to and answered by Dr. Kotcamp:

"Q    All right. Dr. Kotcamp, considering that the injury of which Mr. McCrary complained has happened approximately a year prior to this latest examination and with the symptoms that he reported and the clinical observations that were made would you expect him to have any permanent disability?

"A    Yes, he will have *some weakness on prolonged usage of his leg*.

"Q    What type of physical activities would he have that where he would feel or be able to undergo or be aware of the weakness?

"A    Well, if he was working somewhere where he was going to do a lot of going up and down steps he will notice the weakness to the fractured leg.

"Q    Would complaints of pain after being on his leg where he was having to support weight on them for any length of time be, in your opinion a likely symptom following this type of injury?

"A    Yes.

\*    \*    \*    \*    \*    \*

"Q    Doctor, Mr. Alexander's question was a little broad there. The construction work which requires setting up of ladders, handling heavy equipment, climbing, standing on his feet, squatting, climbing underneath motors, are these the type of things that you related earlier when you were answering the question about that? That would be where Mr. McCrary would feel the weakness and pain on this type of exertion?

"A    Yes.

\*    \*    \*    \*    \*    \*

"Q    In time do you think that the strength in his muscles will rebuild itself?

"A    I don't think they will. *He will probably always have it.* He's got an inch and a half of atrophy which is a pretty fair amount. I think it will build up some but I doubt it will ever build up all the way."    (Emphasis added)

The appellee introduced only one physician, Dr. Walter E. Badenhausen, Jr., whose testimony bearing upon the question is as follows:

"Q    Do you think this man has any permanent disability from a functional standpoint?

"A    From a functional[1] standpoint,—well, that depends, of course, on what his function is. I have never seen him at work and I know he is an electrician. *Probably not considerably, no,* not from a functional standpoint, as an electrician.

"Q    Do you think he has any permanent disability to the body as a whole?

---

1.    Obviously the good doctor was confused in his interpretation of "functional."

"A   *Yes.*

"Q   And what would you evaluate this?

"A   *Seven per cent.*" (Emphasis added.)

The appellant introduced as a witness David Dobson who claimed to be a specialist in the evaluation of able-bodied as well as handicapped people. He testified that in his opinion, based upon his experience and training, the appellant had a disability of 47 percent. Of course the qualifications of this witness and the weight to be given his testimony are questions that address themselves to the sound discretion of the Workmen's Compensation Board.

We conclude that the uncontradicted evidence established some degree of partial disability within the meaning of Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968). It was clearly unreasonable for the board not to so find.

The judgment is reversed with directions to enter another remanding the case to the board for proceedings consistent with this opinion.

All concur.