The SINGER COMPANY, Appellant,

v.

Velma Lois SARVER, Appellee.

Court of Appeals of Kentucky.

Dec. 1, 1972.

Rehearing Denied March 23, 1973.

Bill V. Seiler, Ewen, MacKenzie & Peden, Louisville, for appellant.

John W. Bland, Jr., Lewis & Bland, Elizabethtown, for appellee.

OSBORNE, Justice.

This is an appeal from the Hardin Circuit Court affirming the action of the Workmen's Compensation Board. The question presented to this court is whether the evidence before the Board was of such nature as to require a finding of something other than total disability. The facts of the case are as follows:

On March 13, 1969, appellee struck her knee while employed by the Singer Company. When she grabbed her knee to keep from falling, she felt pain in her back. She consulted a doctor who in turn referred her to Dr. Andrew J. Dzenitis, a neurosurgeon. He examined appellee on June 19, 1969, and found that she was complaining of pain in her back, right hip and leg and that she dated the pain from the occasion of the fall. Dr. Dzenitis testified that X-rays consisting of a myelogram showed an irregularity in that region of her back. Since conservative treatment had rendered no positive results, she underwent an operation on July 1, 1969, at Jewish Hospital. The operation revealed no ruptured disc but did reveal varicosities or dilated veins around the nerve roots. He further testified that the post operative course was essentially uneventful and that she seemed to have good relief from her previous symptoms.

Dr. Thomas M. Marshall assisted in the operation and looked after the patient subsequent to surgery. He testified that he saw her in the hospital and twice in his office, once on August 5, 1969, and again on October 9, 1969. Both Dr. Dzenitis and Dr. Marshall were of the opinion that appellee had no residual disability from the injury or operation.

After the operation appellee went to Dr. W. M. Ewing, who first saw her on May 5, 1970. Dr. Ewing made a diagnosis of a post-operative ruptured lumbosacral disc syndrome. He saw the patient again in January of 1971 and noted no appreciable change in her condition It was Dr. Ew-

ing's opinion that the patient had 25% partial permanent disability to the body as a whole resulting from the accident and the surgery.

Dr. Kenton Leatherman saw appellee in his office on October 23, 1970. Dr. Leatherman testified as follows:

"Q. Doctor, looking at the X-rays of the lumbar spine, is there anything unusual about the spine other than the bony deformities that you have already spoken of?

A. No, there is no evidence of any disease or any arthritic process, or any degenerative process.

Q. The flattening that you noticed of the lumbar spine. Can you describe to the Board what that is, and what causes it, and what the effect of it is?

A. Yes, sir. In a so-called normal spine, there is a lordotic curve or certain sway to the lower back which is the physiological curve, and in this case there is actually flattening of this lumbar curve or a loss of the curve, which in her case was due to contracted muscles in the lumbar area.

Q. Now, the instability that you find of five, I believe it is—can you describe that?

A. Well, I can only state that the X-rays do show narrowing of the lumbosacral disc, which is in the area where the laminectomy or surgery was performed and this is some derangement as a result of this narrowing with loss of normal anatomical alignment in this region."

Dr. Leatherman further testified that in his opinion appellee has a 50% to 75% disability to the body as a whole on a functional basis.

Appellee testified that she was unable to do any work prior to surgery but that subsequent to surgery she had sought employment but had been unable to find suitable employment except for five weeks as a census taker; that she went back to Singer and they had filled her old position. Her testimony is as follows:

"Q. Well, you were ready to report back to work if they had a job for you, is that right?

A. Yes, that I was capable of doing.

Q. And they terminated you because they had a reduction in sales force?

A. That's what I was told.

Q. Now, there was an employee hired to do your job while you were off, is this correct?

A. There was a lady hired to do bookkeeping and all. And then they said that they was going to let her do the sales work and bookkeeping, too. (sic).

Q. And the work that she was doing you were capable of doing if the job had been open, is that not true?

A. Yes, sir. Provided that there wasn't no heavy lifting to it, didn't have to that." (sic).

She further testified that she performed her housework with the assistance of a 13-year-old daughter and she was able to do her washing with a washing machine.

This case reaches us through a somewhat unusual route in that at the time appellee was operated upon she and Singer entered into an agreement for compensation which was an open-end award for full benefits. After Singer concluded that she had sufficiently recovered, it filed a motion to reopen. Proof was taken upon this motion and the Board refused to reopen which leaves the case under its original status in that appellee has an open-end award for total disability.

The only evidence in the record concerning employment opportunities in the locality is the testimony of Walter Manek who testified that he was district manager for Singer Sewing Machine Company. He

testified that there were sales positions open in the area for people with disability problems far more severe than those of appellee.

It is seriously contended by appellant that the Board could not reasonably find under the evidence before it that appellee's condition had not changed. It is further contended that the evidence in no way can be construed to support an award of total disability when tested under the guidelines of our opinion in Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968). While it is true that the Board may translate functional disability into occupational disability and most certainly if we consider Dr. Leatherman's testimony, it is conceivable that the Board could translate this degree of functional disability into total occupational disability.[1] However, in view of the fact that appellee testified that she had sought employment, that she had in fact worked for five weeks as a census taker without difficulty and that she was in fact now performing some of her housework, we believe it was unreasonable for the Board to find that she is now totally disabled. Therefore, this case is remanded to the Board to fix disability at something less than total based upon the factors outlined in Osborne v. Johnson, supra.

Judgment reversed.

All concur.

[1]. In order to reach this result the Board would have to completely ignore the testimony of the operating physician and the treating physician. It strains credulity to think that the Board could completely ignore this testimony, however, under its fact-finding power it may as a matter of law have this right.