**KENTUCKY ALMA COAL COMPANY,**
Appellant,

v.

**James Marshall KIRK and Workmen's Compensation Board of Kentucky,**
Appellees.

Court of Appeals of Kentucky.

June 1, 1973.

William J. Baird, Baird and Baird, Pikeville, for appellant.

Harry R. Stamper, Kelsey E. Friend, Pikeville, J. Keller Whitaker, Dept. of Labor, Frankfort, for appellees.

VANCE, Commissioner.

This is an appeal from a judgment which affirmed an award of the Workmen's Compensation Board for a period of temporary total disability and an additional award for 80% permanent partial disability.

The appellant injured his right hand and arm on January 12, 1968, while working in a coal mine. He was eighteen years old and a high school graduate at that time. His earnings were $75.00 per week.

The medical evidence indicates that the injury resulted in a thirty-five percent permanent functional disability. In terms of occupational disability the appellant's doctor was of the opinion that appellant was

totally incapacitated to perform heavy physical labor but there was little evidence of disability to perform clerical work. Doctor Hossein Sakhai was of the opinion that appellant could do work which did not require powerful hand or finger motions.

In the fall of 1968 appellant enrolled in college and thereafter pursued a course in accounting except for the fall term of 1969 when his schooling was interrupted by surgery.

■ In January 1971, appellant obtained a job as a bookkeeper. In July 1971, he obtained employment with a firm of certified public accountants and was working in that capacity when the award was entered. His wages were $450.00 per month. He testified that he had some residual pain in his hand and arm and some difficulty in operating office machines. His last surgery was in January 1971. The Board awarded compensation for temporary total disability from the date of injury to January 1, 1971. We think the evidence supports that award.

Although appellant was able to attend school in the fall of 1968, the spring term in 1969 and in 1970, he testified as to the difficulties he encountered in taking notes and in performing his school work. He had sustained a crippling injury which required intermittent surgery during the period of 1968 to January 1971, and we cannot as a matter of law determine that the finding of the Board to the effect that appellant was totally disabled during that period of time was clearly erroneous.

The award of the 80% permanent-partial disability presents a question which requires an analysis of our decision in Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968).

In *Osborne* we reaffirmed the concept that disability as used in the Workmen's Compensation Law means occupational disability as contrasted with functional disability. We also held that the degree of disability depends on the degree of impairment of earning capacity.

"If occupational disability is the basis for compensation and if, as seems clear, it means impairment of earning capacity, it would seem that all that need be determined in a compensation case, as concerns disability, is: To what extent has the injured workman's earning capacity been impaired? And it would seem that this would involve only these determinations: (1) What kind of work normally available on the local labor market was the man capable, by qualifications and training, of performing prior to injury; (2) what were the normal wages in such employment; (3) what kind of work normally available on the local labor market is the man capable of performing since his injury; and (4) what are the normal wages in such employment?

"\* \* \*

"\* \* \* And the percentage of his partial disability will be determined by the ratio of the prevailing wage rates in the kind of employment available to him, to the wage rates earnable by him before being injured." Osborne v. Johnson, supra.

We further considered the possibility that a worker's post-injury earnings might exceed his pre-injury earnings and yet the injury in the long run might shorten his work life and reduce his earning capacity.

"From the foregoing discussion a conclusion would seem to be that if the injured workman for the present time can earn the same wages as before being injured, he is not disabled at all for workmen's compensation purposes. However, we believe that to adopt such a proposition would be to treat earning capacity as being static and perfectly measurable (which of course it is not), and to ignore the attrition from the mere passing of the years. KRS 342.110 requires that consideration be given to the nature of the injury and to the age of the workman. While a workman who has sus-

tained a permanent bodily injury of appreciable proportions may suffer no reduction of immediate earning capacity, it is likely that his ultimate earning capacity will be reduced either by a shortening of his work life or a reduction of employment opportunities through a combination of age and physical impairment. Accordingly, it is our opinion that in those instances in which the workman has sustained no loss of immediate earning capacity but has incurred a permanent injury of appreciable proportions, the Workmen's Compensation Board, under KRS 342.110, can and should make an allowance for some degree of permanent partial disability on the basis of the probability of future impairment of earning capacity as indicated by the nature of the injury, the age of the workman, and other relevant factors." Osborne v. Johnson, supra.

Applying these principles to the instant case, we see that claimant may be entitled to some degree of permanent-partial disability if he has incurred a permanent injury of appreciable proportions which will probably impair his future earning capacity.

A permanent injury of appreciable proportions is apparently conceded. The question presented concerns the probability of impairment of future earning capacity. The use of the word *impairment* is misleading. The whole tenor of *Osborne* is that disability does not exist unless there is a reduction of earning capacity and the percentage of disability is measured by the percentage of the reduction.

A proper application of this principle to the instant case necessitates a determination of what probability, if any, exists that the claimant's ultimate earning capacity will be reduced below his earning capacity at the time of injury by reason of the injury, considering the nature of the injury, his age and other relevant factors. A finding that his future earning capacity may be impaired because of the injury,

standing alone, is not sufficient. It must also be determined that there is a probability that his future earning capacity will be reduced below the level of his earning capacity at the time of injury and if so, to what extent.

That portion of the judgment which makes an award for 80% permanent-partial disability is reversed with directions that the case be remanded to the Board for a new determination of the question using the criteria set forth in this opinion. The judgment as it pertains to temporary total disability is affirmed.

PALMORE, C. J., and OSBORNE, REED, MILLIKEN, and STEINFELD, JJ., sitting.

All concur.