# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28 (4) (c), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS AUTHORITY IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

RENDERED: AUGUST 24, 2006
NOT TO BE PUBLISHED

Supreme Court of Kentucky

2005-SC-0790-WC

MANALAPAN MINING COMPANY, INC.                                    APPELLANT


V.

APPEAL FROM COURT OF APPEALS
2005-CA-0805-WC
WORKERS' COMPENSATION NO. 01-70045 & 02-90652


RALPH MORGAN;
HON. SHEILA C. LOWTHER,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                      APPELLEES


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

The Workers' Compensation Board (Board) and the Court of Appeals have

determined that it was within an Administrative Law Judge's (ALJ's) discretion to rely on

the opinion of a physician who received a history that failed to include a prior injury.

They reasoned that the opinion was supported by other credible evidence, particularly

the opinion of another physician who received a history of both the prior injury and the

injuries at issue. See Cepero v. Fabricated Metals, 132 S.W.3d 839 (Ky. 2004).

Moreover, the ALJ relied explicitly on both physicians. Appealing, the employer asserts

that the ALJ lacked such discretion under Cepero and that the ALJ erred by considering

impairment due to a pre-existing lumbar condition. We affirm.

On July 19, 2000, the claimant sought emergency room treatment after injuring

his back while working on a road maintenance crew for the Harlan County Fiscal Court. The diagnosis was an acute lumbar sprain. X-rays taken at that time demonstrated grade I spondylolisthesis at L5-S1 with spondylolysis, but a CT scan revealed no evidence of herniation or stenosis. On July 21, 2000, Dr. Echeverria, the claimant's gatekeeper physician, advised him to remain off work for two weeks. He began working for the defendant-employer's mining company in August, 2001.

There was no evidence of treatment for back complaints between July, 2000, and October 31, 2001, when the scoop car in which the claimant was riding hit a bump and injured his back. He was treated in the emergency room and missed about three weeks of work, then continued working in pain. While pushing a piece of broken equipment out of the mine on March 20, 2002, he experienced an acute onset of low back pain that radiated into his legs. As before, he sought emergency room treatment. Dr. Bean performed a lumbar fusion with instrumentation on July 25, 2002. The claimant testified that although his back pain improved initially, it gradually returned to its original level.

Medical records indicated that the examining physician on October 31, 2001, noted muscle spasm in the lumbar spine. On November 5, 2001, Dr. Echeverria noted the 2000 incident and diagnostic studies. He characterized the claimant's present condition as being an exacerbation of the spondylolisthesis and advised him to remain off work for two weeks. A lumbar MRI on November 21, 2001, confirmed the previous diagnostic findings and also revealed diffuse degeneration in the rest of the spine.

On March 20, 2002, the claimant sought emergency room treatment for complaints of back pain and numbness in the feet. He saw Dr. Echeverria on April 4, 2002, complaining that since the most recent incident he experienced persistent and

-2-

severe back pain that radiated into his leg. An MRI confirmed the previous diagnostic findings but also revealed a small central disc bulge and osteophyte at L5-S1.

Dr. Echeverria referred the claimant to Dr. Bean, who first saw him on May 20, 2002. Dr. Bean noted a history of the October, 2001, and March, 2002, injuries and diagnosed symptomatic spondylolisthesis at L5-S1. After physical therapy proved ineffective, Dr. Bean performed surgery. The discharge summary noted a history of progressive back pain following the two injuries. Dr. Bean later completed a Form 107 in which he attributed the claimant's present condition to the injuries and assigned a 20% impairment, relating none of it to a pre-existing active condition. He imposed numerous work restrictions and stated that the claimant lacked the physical capacity to return to the type of work he performed at the time of the injury.

Dr. Muffly evaluated the claimant on October 16, 2003. His report indicated that he received a history of the 2000 episode of pain "when lifting a concrete chute" as well as a history of the 2001 and 2002 injuries. He diagnosed chronic low back pain, the fusion at L5-S1, and grade 1 spondylolisthesis at L5-S1. Dr. Muffly assigned a 23% impairment, assigned more stringent restrictions than Dr. Bean, and agreed that the claimant could not return to coal mining.

When deposed, Dr. Muffly stated that the claimant's restrictions due to the injuries were permanent and that he did not think the claimant could perform sedentary work. He testified that he reviewed the CT scan and x-rays taken shortly after the 2000 injury. Although he acknowledged that they revealed spondylolisthesis and that the condition was classified as grade 1 both before and after the subsequent injuries, he emphasized that the back pain in 2000 was due to a pulled muscle and that the claimant returned to work. He acknowledged that some impairment could be

-3-

apportioned to the pre-existing condition but noted that it would have been dormant until October 31, 2001, because the claimant had recovered from the 2000 episode of back pain. In his opinion, it was the 2001 injury and 2002 re-injury that aroused the spondylolisthesis, causing it to become disabling and require surgery.

In January, 2004, Dr. Gleis reviewed the claimant's medical records for the employer. He assigned a 20% impairment due to the L5-S1 fusion surgery and a pre-operative impairment of 5% due to muscle spasms. Dr. Gleis stated that the claimant did have a pre-existing condition before the March 20, 2002, injury. He characterized it as being multi-level degenerative disc disease and grade 1 L5-S1 spondylolisthesis that had been active after the July, 2000, injury. Moreover, "[t]he symptoms were severe enough in July, 2000, to warrant a CT scan." He thought that a successful fusion would enable the claimant to return to demanding work but that he could not return to mining.

In February, 2004, Dr. Goldman evaluated the claimant for the employer. He reported a severely restricted range of motion due to back pain, an antalgic gait, and lumbar lordosis. Dr. Goldman diagnosed pre-existing spondylolisthesis and spondylolysis that were symptomatic in July, 2000, and unchanged after the 2001 and 2002 incidents. Absent any objective change, he found it difficult to tell whether the incidents caused new injuries or exacerbated the pre-existing condition. Nonetheless, they did cause the claimant to undergo surgery, which resulted in a 20% impairment. Of that amount, he attributed a 7% impairment to the pre-existing condition. He thought the claimant could not return to mining.

Relying on Cepero, supra, the employer argued that Dr. Muffly's opinion regarding the absence of a pre-existing active impairment should be disregarded because he did not review all of the medical records following the 2000 injury.

-4-

Moreover, Dr. Bean's opinion should be disregarded because he received no history of the 2000 injury. The employer argued that Drs. Gleis and Goldman were of the opinion that the 2001 and 2002 injuries as caused only temporary exacerbations of the claimant's pre-existing condition. On that basis, it maintained that the surgery was performed for the pre-existing condition rather than the injuries. Another argument was that the claimant was only partially disabled and that pre-existing impairment due to spondylolisthesis must be excluded when calculating his award because it was a pre-existing condition that the 2000 injury caused to become active.

The ALJ determined that the claimant experienced traumatic events in 2001 and 2002, that he immediately reported back complaints and sought medical treatment after each of them, and that he eventually required surgery. Therefore, he sustained injuries under KRS 342.0011(1). Convinced that he had a 20% impairment but that the injuries did not entirely prevent him from working, the ALJ determined that he was partially disabled. Turning to the question of pre-existing active impairment, the ALJ stated:

> This is a problematic issue for the Administrative Law Judge. There is no doubt that Mr. Morgan experienced an episode of back pain in 2000. Despite his testimony that this was a negligible event, it did warrant diagnostic tests including x-rays and a CT scan. These studies documented the presence of spondylolisthesis at L5-S1 with spondylolysis. However, the medical records support Mr. Morgan's testimony that he subsequently continued working, performing heavy manual labor, without the necessity of medical treatment. The medical experts who have presented evidence in this claim differ in their opinions on this point. Dr. Goldman felt that 7% of the plaintiff's current 20% impairment was due to a pre-existing symptomatic condition. Dr. Gleiss [sic] agreed that the plaintiff retains a 20% functional impairment. He felt that prior to the surgery the plaintiff had a 5% functional impairment. The defendant argues that a close reading of Dr. Gleiss's [sic] report demonstrates that this was an active and pre-existing impairment. In contrast, Dr. Bean indicated that Mr. Morgan had no pre-existing active impairment. Dr. Muffly also

-5-

> agreed. He testified that the plaintiff had spondylolysis before August 2001 which was aroused into disabling reality by the two work related injuries during the course of the plaintiff's employment as a coal miner. This is certainly consistent with the fact that Mr. Morgan was able to continue performing heavy manual labor from July 2000 until October 2001.
>
> After carefully considering this conflicting evidence, the Administrative Law Judge is persuaded that the plaintiff did not have a pre-existing active condition. The undersigned Administrative Law Judge recognizes the expertise of Dr. Muffley [sic], as well as Dr. James Bean, who also had the benefit of treating the plaintiff for a prolonged period of time. In light of this, the Administrative Law Judge is persuaded that Mr. Morgan did not have a pre-existing active condition.

Having concluded that the claimant did not have a pre-existing active condition, the ALJ relied on the 20% impairment that Dr. Bean assigned and determined that the 2001 and 2002 injuries caused a 20% impairment. In light of the claimant's youth and educational level, the ALJ determined that he was only partially disabled although he did not retain the physical capacity to return to coal mining.

In its petition for reconsideration, the employer argued that prior, active impairment was determined under the AMA Guides and did not depend on factors such as a return to work or the need for medical treatment. Roberts Brothers Coal Co. v. Robinson, 113 S.W.3d 181 (Ky. 2003); Kentucky River Enterprises v. Elkins, 107 S.W.3d 206 (Ky. 2003). The employer also complained that Drs. Muffly and Bean did not have a full and accurate understanding of the claimant's history and that their opinions did not have probative value. Cepero, supra. After the ALJ denied the petition, the employer appealed.

Several cases have addressed the application of the December 12, 1996, amendments to the Act when awarding income benefits to a worker with a pre-existing condition or impairment. In McNutt Construction/First General Services v. Scott, 40

-6-

S.W.3d 854 (Ky. 2001), the court noted that harmful changes proximately caused by work-related trauma are compensable as an injury under KRS 342.0011(1). It explained that when work-related trauma causes a prior, dormant condition to become disabling and result in impairment, the trauma has proximately caused the harmful change. Therefore, it comes within the definition of an injury. Id. at 859.

In <u>Kentucky River Enterprises, Inc. v. Elkins</u>, <u>supra</u>, the court reaffirmed a partial disability award that was based on a 9.5% impairment under medical evidence attributing a 9.5% impairment to the work-related injury's arousal of pre-existing degenerative changes and a 0.5% impairment to the pre-existing condition, itself. Later, in <u>Roberts Brothers Coal Co. v. Robinson</u>, <u>supra</u>, the court noted that the terms "impairment" and "disability" are not synonymous for the purpose of awarding income benefits under KRS 342.730(1)(a) and (b). The court explained that some of the <u>Osborne v. Johnson</u>, 432 S.W.2d 800 (Ky. 1968), factors remained relevant to the question of total disability but that KRS 342.730(1)(b) equates permanent partial disability with AMA impairment. For that reason, pre-existing disability must be excluded from a total disability award, but pre-existing impairment must be excluded when considering the amount and duration of a partial disability award. The court determined that, having found there was no pre-existing active disability, the ALJ erred by excluding 25% of Robinson's total disability award based solely on medical evidence that his pre-existing impairment was 25%. Id. The general assembly has not amended the relevant portions of the statutes since these decisions.

It is undisputed that the claimant is only partially disabled. Under KRS 342.730(1)(b) and (e), disability resulting from the work-related arousal of a pre-existing dormant condition is compensable, but only to the extent that the arousal of the

-7-

dormant condition causes impairment. See Roberts Brothers Coal Co. v. Robinson, supra. Noting that the claimant was not treated for back complaints between July, 2000, and the October 31, 2001, injury and that he performed heavy manual labor, the ALJ determined that his pre-existing back condition was dormant until the 2001 and 2002 injuries aroused it into disability, necessitated surgery, and left him with a 20% impairment. KRS 342.285 designates the ALJ as the finder of fact; therefore, the ALJ has the sole discretion to determine the quality, character, and substance of evidence, including the evidence from medical experts. See Osborne v. Pepsi-Cola, 816 S.W.2d 643 (Ky. 1991); Paramount Foods, Inc. v. Burkhardt, 695 S.W.2d 418 (Ky. 1985). Findings based on a correct interpretation of the law and supported by substantial evidence may not be disturbed on appeal. Western Baptist Hospital v. Kelly, 827 S.W.2d 685 (Ky. 1993); Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986).

In Cepero, supra, the worker bumped his left knee while working and was sent to a clinic where he was diagnosed with a contusion and strain. One week later, he sought treatment from Dr. Box. He failed to mention the accident, but he did report a three-month wheelchair confinement that occurred a few years earlier after he injured his left knee while performing martial arts. Three weeks after the accident at work, he saw Dr. Goddy. Again, he mentioned only the martial arts injury, stating that he had experienced "good days and bad days" thereafter. Dr. Goddy diagnosed a torn anterior cruciate ligament (ACL) and lateral collateral ligament. Noting that a torn ACL cannot repair itself, Dr. Goddy attributed the condition to the martial arts injury. Drs. Changaris and Ballard received no history of martial arts injury and attributed the knee condition to the accident at work, although Dr. Ballard changed the opinion upon receipt of the history. When deposed, the worker denied the prior injury until confronted with Dr.

Goddy's records. He then stated that it had occurred 15 years ago and was "no big deal," a position he continued to take at the hearing. He insisted that he had reported the work-related injury to Drs. Box and Goddy.

Despite Cepero's contradictory testimony, the ALJ found him to be credible and relied on Dr. Changaris, Dr. Ballard's original findings, and records from the clinic. The court determined, however, that the ALJ erred and adopted a portion of the Board's opinion that stated as follows:

> [I]n cases such as this, where it is irrefutable that a physician's history regarding work-related causation is corrupt due to it being substantially inaccurate or largely incomplete, any opinion generated by the physician on the issue of causation cannot constitute substantial evidence. Medical opinion predicated upon such erroneous or deficient information that is completely unsupported by any other credible evidence can never, in our view, be reasonably probable. Furthermore, to permit a ruling of law to stand based upon such evidence that is not reliable, probative and material would be fundamentally unjust. We therefore conclude that the opinions of Dr. Changaris and, to a limited degree, the earliest opinions of Dr. Ballard on causation, do not measure up as substantial evidence, and it was error for the ALJ to blindly elect to adopt their flawed conclusions to support any ruling of law.

Id. at 842-43.

Contrary to the employer's assertion, Cepero, supra, does not entirely prohibit an ALJ from relying on a medical expert whose report contains an incomplete or erroneous history. It removes from an ALJ the discretion to rely on an opinion that is based on such a history and "unsupported by any other credible evidence." Id. at 842. This is not such a case.

Nothing in the record indicates that Dr. Bean knew of the 2000 injury, but nothing indicates that the claimant failed to disclose it in an attempt at deceit. Moreover, Dr. Bean's opinion relating no impairment to a pre-existing active condition was supported

by other credible evidence that the 2000 injury caused only a muscle strain or sprain and that no pre-existing lumbar condition caused an active impairment on October 31, 2001. The ALJ's primary reasons for concluding that there was no pre-existing active condition were Dr. Muffly's testimony and the fact that the claimant performed heavy manual labor after July 21, 2000, but sought no treatment for back complaints. Under the circumstances, Cepero, supra, did not require the ALJ to disregard Dr. Bean's opinion entirely.

The employer complains that Dr. Muffly's opinion on the matter is also flawed because he was unaware that Dr. Echeverria referred the claimant to Dr. Bean in July, 2000, and that the claimant did not follow through. However, a failure to see Dr. Bean or any other physician for back pain until after the 2001 injury could reasonably be viewed as supporting Dr. Muffly's opinion. Under the circumstances, the weight to give the opinion was a matter for the ALJ to decide.

Drs. Gleis and Goldman determined that the claimant had a pre-existing active impairment but disagreed regarding its extent. Dr. Muffly received a history of all three relevant injuries. He characterized the 2000 injury as being a pulled muscle, reviewed the CT scan and x-rays taken in 2000, and was aware that spondylolisthesis was present before the 2001 injury. He was of the opinion that the 2001 injury and 2002 re-injury aroused the condition into disabling reality, necessitated surgery, and caused the claimant's entire impairment. Nothing in the record indicated that the claimant experienced back pain or sought medical treatment for his back during the interval between July, 2000, and October, 2001. Under the circumstances, substantial evidence supported the finding of no pre-existing active condition.

After determining that there was no pre-existing active condition, the ALJ relied

-10-

on Dr. Bean and found that the claimant's present impairment was 20%. Nothing indicated that a probative answer to that question required knowledge of the 2000 injury. Therefore, Cepero, supra, did not prohibit Dr. Bean's opinion on the matter. In any event, his opinion was consistent with those of Drs. Gleis and Goldman.

There was substantial evidence that any pre-existing lumbar condition was dormant until the 2001 and 2002 injuries aroused it into disability and that the surgery and present impairment resulted from 2001 and 2002 injuries. There was also substantial evidence that the claimant's present impairment was 20%. Under the circumstances, the ALJ based the claimant's award on properly supported findings of fact under a correct interpretation of Chapter 342.

The decision of the Court of Appeals is affirmed.

Lambert, C.J.; Graves, Minton, Roach, Scott, and Wintersheimer, JJ., concur. McAnulty, J., not sitting.

COUNSEL FOR APPELLANT:

W. Barry Lewis
Lewis and Lewis Law Offices
151 East Main Street, Suite 100
P.O. Box 800
Hazard, KY 41702-0800

COUNSEL FOR APPELLEE,
RALPH MORGAN:

Johnnie L. Turner
Johnnie L. Tuner, PSC
P.O. Box 351
Harlan, KY 40831