# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 14, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## FINAL

2018-SC-000079-WC

DATE 3/7/19 Kim Redmon, DC

DANIEL LOTTER                                                    APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                    CASE NO. 2016-CA-001648-WC
WORKERS' COMPENSATION BOARD NO. 14-WC-84904

GENERAL ELECTRIC COMPANY,                          APPELLEES
WORKERS' COMPENSATION BOARD, AND
HON. STEVEN BOLTON, ADMINISTRATIVE
LAW JUDGE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Appellant Daniel T. Lotter sustained two work-related injuries while working for Appellee General Electric Company (GE) and was deemed permanently and totally disabled by an administrative law judge (ALJ) in an April 18, 2016 Opinion Award and Order. The Workers' Compensation Board reversed and remanded the case to the ALJ, noting that Lotter had returned to full-time gainful employment at GE, albeit in a different position. Affirming the Board, the Court of Appeals agreed that a remand for proper consideration and application of our decision in *Gunderson v. City of Ashland,* 701 S.W.2d 135 (Ky. 1985) was appropriate. Having carefully reviewed the record, we affirm.

## RELEVANT FACTS

Lotter began work for GE at its Louisville Appliance Park as a production worker in 1994. In April 2014 Lotter was working as a tugger operator when he injured his lower back while picking up and moving a container. Lotter was off work for a while but did not require surgery and eventually returned to work without restrictions on December 1, 2014. Upon return, he had a new position as a dunnage operator but once again primarily operated a small fork truck. In March 2015 he sustained another low back injury while lifting a skid board and remained off work until August 13, 2015.

When Lotter returned to work at GE in August 2015, it was to a new position, as a result of his having successfully bid on a job as an end-of-line repairman. GE manufactures hotel air conditioners and heaters on the so-called Zoneline, where Lotter was assigned. He received extensive training for the position, the duties of which entailed final repair of units, including electrical repair, fixing heaters and control boards, checking connectors and correcting assembly line errors.[1]

The ALJ concluded, in relevant part:

As a result of his April 23, 2014 work-related injury to his lumbar spine, the Plaintiff has a whole person impairment rating of 7% according to the *AMA Guides*, 5th ed. . . .

As a result of his low back condition arising out of the effects of the April 23, 2014 work-related injury, the Plaintiff does not retain the physical capability to return to the same job he was performing at

---

[1]At the time of briefing, he was working 40-50 hours per week without modifications and earning $26.36 per hour. According to GE, as of April 2016 when the ALJ entered his Opinion finding Lotter permanently and totally disabled, Lotter was earning almost $75,000 a year in his new position.

2

the time of his injury. While he did continue to work for the Defendant/Employer off and on in different positions at the same rate of pay for several months after the injury and apparently continues to work as an "end-of line repairman," by the evidence he was never able to perform the same job functions after the injury that he could before. Dr. Eseme, Dr. Chou, Dr. Barefoot and even Dr. Gladstein all limited or restricted him from lifting more than 25 lbs. and bending/twisting, job functions that he had regularly performed pre-injury.

By evidence from the Defendant/Employer's own records, his current employment with GE is in violation of the permanent physical restrictions assigned to him by the GE Medical Center, an in-house medical service owned and operated by the Defendant/Employer.

Having reviewed the facts of Plaintiff's claim, I find that he is unable to perform regular employment in a competitive economy because of his current medical condition, physical limitations and restrictions, need for ongoing treatment, need to take multiple breaks and change positions frequently combined with his advanced age, lack of education and limited vocational background. *Osborne v. Johnson*, 432 S.W.2d 800 (Ky. 1968); *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48, 51 (Ky. 2000).

Recognizing that it was somewhat unusual to find someone working full-time for his former employer to be permanently and totally disabled, the ALJ cited *Gunderson* (a case upholding a finding of permanent total disability despite the employee's return to work) but made no findings as to how it applied to Lotter's case.

On appeal, the Board noted one of its own recent cases which addressed an employee's return to full-time work without accommodations and concluded that the ALJ had "an overly broad interpretation of the holding in *Gunderson*, a factually unique case." The Board noted that further factual findings were

3

necessary to consider the appeal, including particularly whether Lotter's new position was offered by GE as an accommodation. The ALJ was directed

> to reconsider the finding Lotter is permanently totally disabled, and whether his continued employment precludes an award of PTD benefits under the particular circumstances. Should the ALJ determine Lotter's continued employment precludes an award of PTD benefits, an award of permanent partial disability benefits, with any appropriate multiplier, may be considered.

The Board also vacated the ALJ's denial of a vocational rehabilitation evaluation and directed the ALJ to reconsider that issue on remand as well.

A unanimous three-judge panel at the Court of Appeals affirmed, agreeing entirely with the Board's analysis regarding the ALJ's misconstruction of *Gunderson*. The appellate court also agreed that the ALJ should reconsider the issue of vocational rehabilitation.

## ANALYSIS

Kentucky Revised Statute (KRS) 342.0011(11)(c) defines "permanent total disability" (PTD) in relevant part as "the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury . . . ." In *Ira A. Watson*, 34 S.W.3d at 51, referenced by the ALJ in this case, this Court stated that the PTD analysis requires an "individualized determination of what the worker is and is not able to do after recovering from the work injury" and then noted the following considerations:

> it necessarily includes a consideration of factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment

4

conditions. A worker's ability to do so is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities.

As quoted above, the ALJ focused on Lotter's physical condition, a lower back injury, to conclude that he was unable to perform regular employment in a competitive economy, referring also to his "advanced age, lack of education and limited vocational background." On appeal, GE points out that Lotter returned to work at GE, where he received extensive training in the repair of hotel heaters and air-conditioning units as they exited the assembly line. At the time of the hearing, eight months after he returned to work, Lotter was working without any accommodation in a skilled position and was earning more than he had ever earned before in his over twenty-year employment at GE.

Recognizing that Lotter had returned to work, the ALJ cited *Gunderson*, a case the Board appropriately referred to as "factually unique." In that case, Gunderson, an Ashland police officer, was shot in the line of duty and suffered severe injuries that left him a quadriplegic. 701 S.W.2d at 136. He eventually returned to work for the Ashland Police Department as a police dispatcher, after modifications were made to accommodate him. The fact-finder at that time, the Workers' Compensation Board, found him 100% permanently disabled and the circuit court affirmed, but the Court of Appeals reversed. *Id.* This Court reversed the appellate court and reinstated the judgment of the circuit court and award of the Board.

> It could be argued that *Osborne* supports the decision of the Court of Appeals that the claimant should be awarded a percentage of permanent partial disability. However, a close

5

examination of *Osborne, supra,* at 804, indicates that the determination of a claimant's post-injury earning capacity is based on normal employment conditions:

> . . . the essence of the test is the probable dependability with which the claimant can sell his services in a competitive labor market, undistorted by such factors as business boom, *sympathy of a particular employer* or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps. Larson's, *Workers' Compensation,* Vol. II, § 57.51 (Emphasis added.)
>
> Our view is that when regular employment is not available in the kind of work he is customarily able to do in the area where he lives, a claimant may be found totally disabled per KRS 342.620(11).

*Id.* The *Gunderson* Court emphasized that the injured officer was a quadriplegic, "working on a police dispatching system which has been specially outfitted for his handicap and . . . subsidized by local, federal and state government." *Id.* at 137. Ultimately, this Court upheld the PTD finding because except for the "compassionate treatment of his employer, [Gunderson] was entirely precluded from successful competition for employment in the job market." *Id.*

As the Board observed, in this case the ALJ appears to have an "overly broad interpretation" of *Gunderson,* but in any event the Opinion and Award contained no factual findings that explain how Lotter fits, if he does, within the factors identified in that case, *i.e.,* the circumstances which constitute an exception such that an injured employee who is working full-time at gainful employment can still be deemed permanently and totally disabled. The Court of Appeals affirmed the Board's reversal and remand to the ALJ and, so must we, given controlling Kentucky law.

6

We affirm the Court of Appeals Opinion, affirming the Board's Opinion, which remands this case to the ALJ for further consideration of Lotter's case pursuant to the statute and controlling case law and for reconsideration of the issue of vocational rehabilitation. As the Board emphasized, additional fact-finding is necessary to the proper disposition of this appeal.

C.J. Minton; Hughes, Keller, Lambert, VanMeter, and Wright, JJ., sitting. All concur.


COUNSEL FOR APPELLANT:

Christopher P. Evensen


COUNSEL FOR APPELLEE,
GENERAL ELECTRIC COMPANY:

Judson Fuller Devlin